THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUSSELL C. MILLER, Defendant-Appellant.

Fourth District    No. 4—03—0033

Opinion filed December 23, 2004.

APPLETON, J., dissenting.

Daniel D. Yuhas and Keleigh L. Biggins, both of State Appellate Defender's Office, of counsel), for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:
In October 2002, at a stipulated bench trial, the court found

defendant guilty of unlawful possession of a controlled substance (720 ILCS 570/402(a)(6.5) (West 2002)). In December 2002, the court sentenced defendant to eight years' imprisonment. Defendant appeals, arguing the court erred in denying his motion to suppress where the police searched his vehicle incident to his arrest on a civil body attachment. We affirm.

## I. BACKGROUND

In April 2002, the State charged defendant, by information, with unlawful possession with intent to deliver a controlled substance, more than 15 grams of a substance containing methamphetamine (720 ILCS 570/401(a)(6.5)(A) (West 2002)) (count I); unlawful possession of methamphetamine manufacturing chemicals, pseudoephedrine, with intent to manufacture 30 to 150 grams of a substance containing methamphetamine (720 ILCS 570/401(a)(6.6)(A) (West 2002)) (count II); and unlawful possession of a controlled substance, 15 to 100 grams of methamphetamine (720 ILCS 570/402(a)(6.5) (West 2002)) (count III).

In July 2002, defendant filed a motion to suppress the evidence seized from his car, arguing an arrest pursuant to a civil body attachment did not warrant a search of his car. At the September 2002 hearing on the motion to suppress, the trial court heard the following testimony.

On April 15, 2002, around 1 p.m., Inspector Lee Mangold of the Quincy police department and Trooper Patrick Frazier, a drug investigator with the Illinois Drug Task Force in Quincy, observed defendant, whom they considered a person of interest, driving his Jeep in Quincy. Upon checking for warrants, the officers learned defendant was subject to a civil body attachment for failure to appear in court in a divorce matter. The officers followed defendant as he pulled into a driveway across the street from a friend's home, pulled in behind him, and blocked his car in the driveway. Defendant exited his car and locked the doors. The officers informed him he was subject to a civil body attachment. Officer Mangold immediately arrested and handcuffed defendant. He then patted down defendant and did not find any weapons or contraband. Officer Wheeler, from the Quincy police department, arrived about that time in his squad car and placed defendant in the squad car.

Defendant requested his friend be allowed to take the car keys, but the officers took the car keys and proceeded to search the automobile without defendant's permission. Inside a trash bag in the car was a cardboard box containing several smaller boxes of envelopes of over 3,000 pseudoephedrine pills, which Officer Frazier knew to be

a key ingredient in the manufacture of methamphetamine. He continued searching the vehicle and found little plastic bags of methamphetamine behind the front seats on the floorboard in the back covered compartment of the Jeep. A piece of tinfoil with methamphetamine residue was later found in the console of the car.

Following the testimony, the trial court asked the parties to submit supporting authority. After additional arguments of counsel, the court issued its findings of fact. Specifically, the court found this was not an inventory search but was a search incident to arrest pursuant to a civil bench warrant. The court further found defendant did not consent to the search of his vehicle. The court stated the officers made no pretense: they were searching for contraband and using the custodial arrest to do so. The court found, based upon the evidence, although the Jeep was covered with some type of canvas covering, it was not a locked trunk and once the bag was opened in the passenger portion of the vehicle revealing unlawful substances, further search of the vehicle was justified. The court then denied defendant's motion to suppress.

In October 2002, the State dismissed counts I and II, and the trial court held a stipulated bench trial and found defendant guilty of count III, unlawful possession of a controlled substance (720 ILCS 570/402(a)(6.5) (West 2002)).

In December 2002, defendant filed a motion for new trial, which the trial court denied. The court sentenced defendant as stated.

This appeal followed.

## II. ANALYSIS

Defendant contends that the search of his car violated the fourth amendment's prohibition against unreasonable searches. Specifically, he argues the officers orchestrated a stop pursuant to a civil body attachment when he had not committed any traffic offense; he was not engaged in the commission of any criminal offense; and the officers had no reason to believe he was attempting to conceal a weapon, to escape detention, or to destroy evidence of a crime for the sole purpose of searching his car.

When a trial court's ruling on a motion to suppress involves factual determinations or credibility assessments, the court's ruling will not be disturbed on review unless it is manifestly erroneous. *People v. Gonzalez*, 204 Ill. 2d 220, 223, 789 N.E.2d 260, 263 (2003). Where, as here, the facts are not in dispute, the ultimate question posed by the legal challenge to the trial court's ruling is reviewed *de novo*. *People v. Bunch*, 207 Ill. 2d 7, 13, 796 N.E.2d 1024, 1028 (2003).

The United States Constitution and the Illinois Constitution protect every person from unreasonable searches and seizures. U.S.

Const., amend. IV; Ill. Const. 1970, art. I, § 6. A warrantless search or seizure is *per se* unreasonable unless it falls within one of several recognized and limited exceptions. *People v. Stehman*, 203 Ill. 2d 26, 34, 783 N.E.2d 1, 5 (2002); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 576, 91 S. Ct. 2022, 2032 (1971). One such exception that has been found reasonable under the fourth amendment is a search incident to a lawful arrest. *Stehman*, 203 Ill. 2d at 34, 783 N.E.2d at 5; *United States v. Robinson*, 414 U.S. 218, 224-26, 38 L. Ed. 2d 427, 434-36, 94 S. Ct. 467, 471-73 (1973). The rationales behind the search-incident-to-arrest exception to the warrant requirement are the need to (1) disarm the suspect to take him into custody and (2) preserve evidence. *Robinson*, 414 U.S. at 234, 38 L. Ed. 2d at 439-40, 94 S. Ct. at 476. "[A]n officer making a lawful custodial arrest may search the person of the arrestee and the area within his immediate control, into which the arrestee might reach in order to obtain a weapon or destroy evidence." *Stehman*, 203 Ill. 2d at 34, 783 N.E.2d at 5, citing *Chimel v. California*, 395 U.S. 752, 762-63, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040 (1969). " '[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.' " *Stehman*, 203 Ill. 2d at 34, 783 N.E.2d at 5, quoting *New York v. Belton*, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864 (1981).

Here, the police searched defendant's car incident to his arrest on a civil warrant. Defendant argues the rationales behind the search incident to arrest do not apply because he was arrested on a civil warrant and not based on probable cause he had committed a crime. Clearly, had defendant been arrested for a criminal offense, the search of his car would have been lawful under *Belton*. The question is whether police may search a person's vehicle incident to that person's arrest on a civil warrant. In *People v. Allibalogun*, 312 Ill. App. 3d 515, 518, 727 N.E.2d 633, 636 (2000), this court held the police may conduct such a search. Defendant argues *Allibalogun* was wrongly decided and should be reversed. We disagree.

In *Allibalogun*, 312 Ill. App. 3d at 516, 727 N.E.2d at 635, the defendant was initially stopped for speeding when the officer learned he was subject to a civil warrant. After taking the defendant into custody on the civil warrant, officers searched his car while he sat handcuffed in the squad car, finding bags of marijuana. *Allibalogun*, 312 Ill. App. 3d at 517, 727 N.E.2d at 635. Relying on *Belton*'s bright-line rule that an officer can search the passenger compartment of the car following a custodial arrest, this court found the officer justified in searching the defendant's car. *Allibalogun*, 312 Ill. App. 3d at 519, 727 N.E.2d at 637.

Similarly, here, while the officers may not have had a need to prevent defendant from destroying evidence, they did have a legitimate interest in determining whether defendant had a weapon. See *Allibalogun*, 312 Ill. App. 3d at 519, 727 N.E.2d at 636. When an officer takes a suspect into custody, it does not matter if it is for a criminal offense or on a civil warrant. The key is custody, not the underlying reason for it. Here, defendant was lawfully taken into custody. In light of *Belton* and the State's interest in officer safety, we conclude *Allibalogun* was correctly decided.

Moreover, we disagree with defendant's claim the officers orchestrated or contrived the stop of his vehicle to search for evidence of a crime. While the officers may have been pleased to find defendant was the subject of a civil warrant, they did not contrive the existence of the warrant or orchestrate its issuance. Here, defendant exited his car after police initiated contact with him by pulling in behind him, and they did so to take him into custody on the outstanding warrant, a legal reason. See *Stehman*, 203 Ill. 2d at 39, 783 N.E.2d at 8 (" 'The occupants of a vehicle cannot avoid the consequences of *Belton* merely by stepping outside of the vehicle as the officers approach. [Citation.]' *Thomas[v. State]*, 761 So. 2d [1010,] 1014 [(Fla. 1999)]").

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

JUSTICE APPLETON, dissenting:

I dissent from the affirmance of the trial court's refusal to suppress the evidence gathered by the arresting officers. I do so primarily to state my disagreement with the precedents relied upon by the majority.

As the court stated in the beginning of its analysis in *People v. Bailey*, 159 Ill. 2d 498, 503, 639 N.E.2d 1278, 1280 (1994), "[t]he controlling legal principles are quite settled. The fourth amendment to the United States Constitution does not prohibit all State-initiated searches and seizures; it prohibits only those that are unreasonable." The opinion then cites *Chimel* for the proposition with which I agree: "It is reasonable for police to search [an] arrestee for weapons that the arrestee could use to resist arrest or escape, or for evidence that the arrestee could conceal or destroy. The search is restricted to the person of the arrestee and any area into which the arrestee can reach."

*Bailey*, 159 Ill. 2d at 503, 639 N.E.2d at 1280, citing *Chimel*, 395 U.S. at 762-63, 23 L. Ed. 2d at 694, 89 S. Ct. at 2040.

Our supreme court in *Bailey*, however, then went further, using the rationale of the United States Supreme Court in *Belton*. There, a "bright-line" rule was established: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. The court in *Bailey* then applied *Belton* to hold as follows: "Although a search incident to arrest is based on the need to disarm and discover evidence, the authority to search does not depend on the probability in a particular case that weapons would in fact be found or evidence would in fact be destroyed." *Bailey*, 159 Ill. 2d at 504, 639 N.E.2d at 1281.

The difficulty with a bright-line rule, despite the questionable foundations for such an approach in constitutional jurisprudence, is that rather than illuminating a constitutional principle, it is used like a laser to carve out greater and greater exceptions to the existence of personal liberty upon which the framers rested the construction and philosophical underpinnings of our government. This case is a classical example of the fallacy of such an approach.

Here, defendant was outside of his car, with the doors locked, when he was arrested by the police. While the police had followed him, they had no opportunity to stop him in his vehicle. To extend the rationale of *Belton*, *Bailey*, and *Allibalogun* to such circumstances completely contradicts the underlying rationale for such searches as explained by the Supreme Court in *Chimel*. The logic employed fails to cross the chasm between the acknowledged need for officer safety and a vehicle search. Under such an extension, a defendant standing outside his house at the time of his arrest could have his home searched incident to the arrest without a warrant, not based on any existing case authority but rather on the theoretical underpinning of this decision and the precedents upon which it relies.