No. 2--04--1212

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--2229 |
| ROY G. MOORMAN, | ) ) | Honorable George J. Bakalis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Roy G. Moorman, appeals the judgment of the circuit court of Du Page County finding him guilty of possession of a controlled substance (720 ILCS 570/402(c) (West 2002)). He raises two allegations of error. First, defendant argues that the trial court erred in denying his motion to suppress physical evidence and a statement he made. He also contends that he was not proven guilty beyond a reasonable doubt. For the reasons that follow, we affirm.

Before proceeding further, we remind defendant's appellate counsel of the necessity of complying with the supreme court's rules governing the form and content of appellate briefs. Rule 341(e)(7) requires that the argument section include citation to the portions of the record relied upon. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. Additionally, Rule 341(d) provides that "[c]itations shall be made as provided in Rule 6." Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(d), eff. October 1, 2001. Rule 6 states

that "[c]itations of cases must be by title, to the page of the volume where the case begins, and to the pages upon which the pertinent matter appears in at least one of the reporters cited." 145 Ill. 2d R. 6. We caution that the failure to comply with these rules can result in sanctions, including deeming an argument waived. See Chicago Title & Trust Co. v. Weiss, 238 Ill. App. 3d 921, 927-28 (1992) (noting that violation of Supreme Court Rule 341(d), which incorporates Supreme Court Rule 6, can result in waiver of an argument).

## I. BACKGROUND

The present appeal arises out of a traffic stop following which defendant admitted to possessing a quantity of cocaine. Du Page County Deputy Sheriff Chris O'Brochta was assisting undercover detectives from the Addison police department in an operation where the undercover officers conducted surveillance of the Bradford Court Apartments in Addison. The apartment complex is known as a high-crime, high-drug, and high-gang-activity area. The undercover officers would radio to supporting officers, like O'Brochta, and inform them of any vehicles whose occupants met with suspected drug dealers. The supporting officers would then follow the vehicle and look for traffic violations so that the vehicle could be stopped.

On April 14, 2003, Detective Raysby, who did not testify at trial or during the hearing on defendant's motion to suppress, radioed O'Brochta and informed him that a silver Kia had just left the apartment complex. The Kia was defendant's vehicle. O'Brochta followed it, and, upon noting that the license-plate sticker on the vehicle was expired, initiated a traffic stop. O'Brochta approached the vehicle and asked defendant to produce his driver's license. O'Brochta and defendant both testified that, at that time, defendant informed O'Brochta that his license was revoked. They disagree as to whether O'Brochta told defendant why he was stopped. According to defendant, O'Brochta asked

him whether there were any drugs in the vehicle. O'Brochta then told defendant to exit the vehicle and directed him to stand at its rear.

Detective Gilhooley, who was also supporting the operation, arrived at this time. He stood with defendant at the rear of the vehicle, and O'Brochta approached the passenger. Gilhooley asked defendant whether there were any drugs in the car. O'Brochta told the passenger that he knew she had just left the Bradford Court Apartments and had met with suspected drug dealers. The passenger mumbled, did not make eye contact, and avoided responding. Upon being asked whether she and defendant had purchased drugs, she nodded affirmatively. O'Brochta asked her to give him the drugs, and she produced a bag of white "rock powder" from her mouth. O'Brochta held up the bag so that Gilhooley could see it. O'Brochta spoke with the passenger for about 30 seconds. According to Gilhooley, who was speaking with defendant while O'Brochta questioned the passenger, defendant admitted that the drugs belonged to him when O'Brochta displayed the bag. Defendant also stated that he had given the drugs to his girlfriend to hide in her mouth while they were being pulled over. Defendant's conviction rests largely on this admission. After speaking with the passenger, O'Brochta went to his squad car to run defendant's driver's license. This confirmed defendant's statement that his license had been revoked, and defendant was placed under arrest.

Defendant's version of events differs somewhat from that of the two police officers. For example, he contends that he was handcuffed and placed in the squad car much earlier than the officers indicate, that he was almost immediately questioned about drugs, and that the encounter lasted much longer than the officers indicate. However, the trial court, following both the suppression hearing and the trial, found defendant's testimony to lack credibility. Given the inconsistencies in defendant's testimony, which the trial court pointed out, we cannot say that this

finding was erroneous. We will discuss additional facts and testimony as necessary to resolve the issues defendant raises.

## II. ANALYSIS

Defendant raises two issues on appeal. First, he argues that the trial court should have suppressed the narcotics recovered from the passenger, because the police exceeded the scope of a proper Terry stop (see Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) under the circumstances. He also makes a related argument that the statement he made to Gilhooley should have been suppressed as the fruit of that alleged illegality and also because the statement was coerced. Second, defendant asserts that he was not proven guilty beyond a reasonable doubt. We disagree with both contentions.

## A. Motion to Suppress

In reviewing the denial of a motion to suppress, we will accept the factual findings of the trial court so long as they are not contrary to the manifest weight of the evidence. People v. Lewis, 363 Ill. App. 3d 516, 523 (2006). The ultimate issue of whether police conduct comported with the strictures of the fourth amendment (U.S. Const., amend. IV) is, however, subject to de novo review. Lewis, 363 Ill. App. 3d at 523. The same two-tiered standard applies to the voluntariness of a confession. In re G.O., 191 Ill. 2d 37, 50 (2000). As always, questions regarding the credibility of witnesses, the resolution of evidentiary conflicts, and the determination of the amount of weight to which evidence is entitled are primarily the responsibility of the trier of fact, and a court of review typically will not substitute its judgment on such matters. People v. Brooks, 187 Ill. 2d 91, 132 (1999). With these standards in mind, we now turn to the substance of defendant's arguments.

We will first consider whether the police exceeded the scope of a proper Terry stop in their handling of defendant. The fourth amendment to the United States Constitution permits only those seizures that are reasonable. People v. Gherna, 203 Ill. 2d 165, 181 (2003). Stopping an automobile constitutes a seizure, the permissibility of which is analyzed in accordance with Terry. People v. Mendoza, 364 Ill. App. 3d 564, 569 (2006). The analysis consists of two steps: we must first consider whether the stop was justified at its inception and second ascertain whether it was reasonable in scope given the circumstances that justified the stop in the first instance. People v. Moss, 217 Ill. 2d 511, 527 (2005). In this case, there is no dispute that the stop was justified at its inception, in that O'Brochta observed an expired license-plate sticker on the vehicle that defendant was operating. Defendant's argument, then, turns on the second portion of the analysis. Determining whether police questioning that occurs during the course of a traffic stop is reasonable in scope requires a three-part analysis. People v. Gonzalez, 204 Ill. 2d 220, 235 (2003). First, if the questioning is reasonably related to the purpose of the stop, it is permissible and the inquiry terminates. Gonzalez, 204 Ill. 2d at 235. Second, if the questioning is not reasonably related to the purpose of the stop, we must consider whether a reasonable and articulable suspicion exists to justify it. Gonzalez, 204 Ill. 2d at 235. If no such suspicion exists, we must then consider whether, given the totality of the circumstances, the questioning "impermissibly prolonged the detention or changed the fundamental nature of the stop." Gonzalez, 204 Ill. 2d at 235.

Clearly, questioning defendant about drugs was completely unrelated to the observed violation--an expired license-plate sticker--that provided the basis for the stop. It was also unrelated to defendant's admission that he was driving while his license was revoked. Thus, we must consider whether the police had a reasonable and articulable suspicion that justified questioning defendant

about whether he was in possession of any narcotics. Whether the police had a reasonable suspicion that criminal activity was afoot is judged with reference to the totality of the circumstances. People v. Austin, 365 Ill. App. 3d 496, 505 (2006). When a number of law enforcement officers act in concert, the knowledge they possess collectively must be considered in its entirety, and it is of no moment that any given individual does not possess sufficient knowledge to give rise to a reasonable suspicion. People v. Eyler, 132 Ill. App. 3d 792, 799 (1985). The inquiry focuses on the circumstances known to the officers at the time of the questioning. People v. Ertl, 292 Ill. App. 3d 863, 868 (1997). As has oft been stated, a mere hunch does not constitute a reasonable suspicion. People v. Crest, 188 Ill. App. 3d 768, 772 (1989).

In this case, the salient point is whether the police had knowledge that gave rise to a reasonable and articulable suspicion that defendant possessed narcotics, since that is what the objected-to questioning was about. From their testimony, it is clear that O'Brochta and Gilhooley knew virtually nothing about the alleged transaction at the apartment complex. O'Brochta testified only in general terms. He described the operation he was supporting in the following manner: "There were surveillance officers watching drug dealers--suspected drug dealers. The detectives would inform us which vehicle met with drug dealers, at which time we would try to follow the vehicles that met with the drug dealers." As for the call he received regarding defendant, O'Brochta testified that he was informed that a silver Kia had left the complex after its occupants met with suspected drug dealers. As for why they suspected that the individuals were drug dealers, O'Brochta added that occupants of other vehicles, who had been stopped after meeting with individuals at the apartment complex, had purchased drugs from them. At one point, the following exchange took place between defense counsel and O'Brochta:

"Q. Lets [sic] talk about the silver Kia you said met with drug dealers. What did it do, what did the occupants of the silver Kia do when it met with drug dealers?

A. The information I got from Detective Raysby is that vehicles were pulling up to these drug dealers, they were approaching vehicles, a hand to hand type transaction was made where cash was exchanged.

Q. Talking about this car, not all cars, the silver Kia.

A. You'd have to ask Detective Raysby, I don't know."

Thus, it is clear that O'Brochta possessed no knowledge about the transaction in which defendant was alleged to have been involved. Similarly, Gilhooley and defendant's attorney engaged in the following colloquy:

"Q. Well, do you know what the nature of the drug deal was?

A. No.

Q. Do you know who it was who claimed to have seen the silver Kia involved in the drug deal?

A. No, I don't.

Q. Do you know what kind of drugs that were purchased?

A. No.

Q. Or from a black man or white man?

A. No.

Q. Or from a man or a woman?

A. No.

Q. Or did you know the vantage point of the observer?

A. No.

Q. Do you know how many people were involved in the drug deal?

A. No.

Q. Were you aware of any photograph or video or audio of such a drug deal?

A. No.

Q. And, in fact, it would be fair to say the only thing you had was the say so of somebody whose name you don't remember, that there was possibly a drug deal?

A. Correct."

Like O'Brochta, Gilhooley could provide no information regarding the transaction that took place at the apartment complex.

That leaves few facts for us to consider in determining whether the officers had a reasonable suspicion sufficient to expand the scope of the Terry stop to include an inquiry regarding narcotics. First, we have the fact that the Bradford Court Apartments were known to the police as a high-crime, high-drug area. Second, defendant did meet with someone whom another officer suspected of being a drug dealer, though we do not know why the other officer, presumably Raysby, suspected that individual of dealing drugs. We do know that other individuals had been arrested after meeting with people in the apartment complex and purchasing drugs there, but we do not know whether the individual with whom defendant met was the person who sold drugs to these prior arrestees. Finally, we know that another officer--Raysby--suspected defendant of purchasing drugs. These facts are an insufficient basis to form a reasonable suspicion that defendant purchased drugs at the apartment complex.

The first fact, defendant's presence in a high-crime, high-drug area, does provide some support for the State's position; however, presence in a high crime area, by itself, is an insufficient basis for a reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 676 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime"). Indeed, the second fact, as it was based only on O'Brochta's testimony that others had been arrested after meeting with individuals in the apartment complex, really is just another way of saying that defendant was in a high-crime area. Thus, if reasonable suspicion existed in this case, there had to be something more than the fact that defendant was at the Bradford Court Apartments. Moreover, that "something more" had to be additional "specific and articulable facts which raise a reasonable suspicion that the person stopped has committed or is about to commit a crime." People v. Avant, 331 Ill. App. 3d 144, 152 (2001). Such facts do not appear in the record.

The key problem with the State's case here is that the officer who observed the transaction did not testify. As noted previously, we could have considered what Raysby observed in determining whether a reasonable suspicion, sufficient to justify expanding the scope of the stop, existed. Indeed, in People v. Fox, 155 Ill. App. 3d 256, 263 (1987), this court wrote:

> "Where officers are working together, the knowledge of each is the knowledge of all, and the arresting officer has the right to rely on the knowledge of the officer giving the command together with his own personal knowledge. [Citations.] Probable cause for an arrest may be established on the basis of all the information by the officers working in concert [citations], and, even if such knowledge is not told to the arresting officer, it may be

considered by the trial court in determining whether there was probable cause so long as such information was somehow placed in the record." (Emphasis added.)

Although we could have considered what Raysby knew, those facts were never presented in the proceedings below. We realize that Fox speaks of probable cause while the instant case involves reasonable suspicion; however, the inquiry is essentially the same, only the quantum of information needed in support differs. Thus, Fox provides guidance here.

We wish to clarify one point. O'Brochta did nothing wrong by relying on Raysby's communication. Officers acting in concert may rely on information or directions provided by other officers. However, when it comes time for the State to justify its actions in court, we must be presented with the relevant information that the officers were acting upon. Insofar as a judicial determination regarding the propriety of a seizure is concerned, there is no doctrine that simply allows an officer to act in good faith on the word of another officer. While officers can act in concert, sufficient facts must be presented to the court to justify the action in question. In a judicial proceeding, reasonable reliance, save on a determination rendered by a judicial officer (see United States v. Leon, 468 U.S. 897, 916-21, 82 L. Ed. 2d 677, 694-97, 104 S. Ct. 3405, 3417-19 (1984)), has no bearing on the outcome of a case such as this.

The State relies upon People v. Graves, 281 Ill. App. 3d 386, 390-91 (1996), where the court found reasonable suspicion that the defendant had purchased drugs on the following facts:

"Our examination of the testimony at the suppression hearing leads us to conclude that the trial court did not err in finding that the stop of the taxi by the officers was based on a reasonable, articulable suspicion of criminal activity as contemplated by Terry v. Ohio. There was testimony that controlled purchases of cocaine from the residence during the week

preceding defendant's arrest identified the residence as a location of cocaine supply. Surveillance, searches, and questioning of persons leaving the residence during the three hours preceding defendant's arrest established that cocaine sales from within the residence were at that time ongoing and rampant. Defendant's movements in entering and immediately departing the residence at 2 a.m., while his taxi waited down the block, were consistent with what surveillance had shown to be a typical scenario for drug purchases."

In Graves, as the last sentence of the quotation indicates, there was testimony regarding the defendant's actual conduct at the residence from which cocaine was suspected of being sold, and the court noted that the defendant's conduct was "consistent with what surveillance had shown to be a typical scenario for drug purchases." Graves, 281 Ill. App. 3d at 391. In the present case, we know nothing of defendant's conduct, much less why it indicated he had purchased narcotics. All we know is that he was present at a location where drugs were frequently sold. That is not enough for a reasonable suspicion. See People v. Harper, 237 Ill. App. 3d 202, 205-06 (1992) ("The facts known to the officers simply did not establish an articulable basis to believe that a crime had been, or was about to be, committed. The officers merely observed defendant leave a car parked near the subject premises, enter the building, remain for a short time, and leave. The officers did not observe any transactions within the building or hear any conversations. They did not know what defendant did while inside the building. They had not received a report of any crime or suspicious activity in the vicinity. Their decision to stop defendant was based on no more than a hunch that he might be involved in drug activity").

Accordingly, we conclude that the officers did not possess a reasonable suspicion that defendant was in possession of narcotics, which would have allowed them to expand the scope of the

stop. We will not engage in conjecture regarding what Raysby might have observed, although we note that the one fact in the record relevant to that point indicates that whatever he observed was an insufficient basis for a stop. Had Raysby observed anything that would have justified a stop, he likely would have simply directed O'Brochta to stop defendant. Instead, O'Brochta followed defendant, looking for a traffic violation to justify a stop. Hence, the most we can discern from the record is that no reasonable and articulable suspicion existed to question defendant about narcotics, and the State, for whatever reason, chose not to call Raysby to dispel this inference.

Having concluded that there was no reasonable suspicion to question defendant about narcotics, we must next consider whether, given the totality of the circumstances, the questioning "impermissibly prolonged the detention or changed the fundamental nature of the stop." Gonzalez, 204 Ill. 2d at 235. It does not appear from the record that the stop was prolonged to more than a de minimus extent, so we must focus on whether the questioning changed the nature of the stop.

Before we answer this question, we must determine exactly what the nature of the stop was at the time defendant was questioned about narcotics. It is well established that fourth amendment rights are personal, that is, the amendment protects people rather than places. People v. Rosenberg, 213 Ill. 2d 69, 77 (2004). Thus, " 'they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure.' " Rosenberg, 213 Ill. 2d at 77 quoting Simmons v. United States, 390 U.S. 377, 389, 19 L. Ed. 2d 1247, 1256, 88 S. Ct. 967, 974 (1968). Thus, we emphasize at the outset that defendant is not entitled to assert the rights of the passenger in the vehicle, and if the stop was erroneously expanded with regard to her, it is of no relevance to the resolution of this appeal. Defendant can prevail only if his fourth amendment rights were violated.

No. 2--04--1212

Next, we note that when O'Brochta approached defendant's vehicle and first spoke with him, defendant stated that he could not produce a driver's license because it was revoked. This admission forms a basis for more than a reasonable suspicion that defendant had committed a crime; it constitutes probable cause, and, more importantly as we will explain below, it provided probable cause for an offense that took the encounter outside the scope of a traffic stop. In People v. Anderson, 112 Ill. App. 3d 270, 273 (1983), the court held that, "In our view, defendant's statement, as related by officer O'Dell, that he broke a window at the Messick residence after he and two companions arrived there with the intent of committing a burglary, was in itself sufficient to establish probable cause that defendant had participated in the commission of a burglary." (Emphasis added.) See also People v. Jordan, 43 Ill. App. 3d 660, 662 (1976) ("Once probable cause is established, that is, by the admission of the defendant that he had snatched a purse, the arrest and search incident thereto are proper"). Indeed, statements against one's interest are considered presumptively reliable. People v. Weston, 271 Ill. App. 3d 604, 611 (1995) ("One indicia of reliability of information is found in admissions against the penal interests of the party giving the information"). Probable cause requires only that the facts and circumstances warrant a reasonable belief that an individual has committed a crime. Gherna, 203 Ill. 2d at 176. Defendant's straightforward statement that his license had been revoked--which there was no apparent reason to doubt--provided O'Brochta with probable cause to arrest defendant for driving while his license was revoked.

Because probable cause existed to arrest defendant for driving with a revoked license, the scope of the stop changed. It is true that, insofar as a traffic stop is concerned, courts "generally do not distinguish between those cases in which the traffic stop is based on Terry's 'articulable suspicion' and those cases in which the traffic stop is supported by probable cause" and that, therefore, "Terry

-13-

principles apply even in the presence of probable cause." Gonzalez, 204 Ill. 2d at 228. However, this principle applies only if a traffic stop is at issue. Here, if probable cause existed for something more than a traffic violation, Terry no longer applied, and defendant could be taken into custody. Under such circumstances, a greater intrusion into defendant's fourth amendment interests is warranted.

A stop where an officer has reasonable suspicion or probable cause to believe that an individual has committed a traffic violation is a very different situation from when an officer has probable cause to believe that an individual has committed a more serious offense. People v. Smith, 315 Ill. App. 3d 772, 775 (2000) ("A stop for a minor traffic violation is something very different from a lawful custodial arrest"). On this distinction, our supreme court has provided us with the following guidance:

"When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. [Citations.] The officer may perform some initial inquiries, check the driver's license, and conduct a speedy warrant check. [Citations.] If no further suspicion is aroused in the officer following these inquiries, the traffic stop should go no further. [Citations.] The officer should issue a warning ticket or a citation, as appropriate, and allow the driver to leave." People v. Cox, 202 Ill. 2d 462, 468 (2002).

Despite this language, it is unclear as to whether Cox should be read as stating that an officer may never arrest an individual for a traffic violation.

The dissent writes as if the law on this point were settled and states that we "cannot seriously contend that in [Cox and People v. Jones, 215 Ill. 2d 261 (2005)] our supreme court determined that Atwater [v. City of Lago Vista, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001),] is not the

law in this state." Slip op. at 30. On the contrary, we do contend precisely that the holdings in Cox and Jones are inconsistent with the central holding of Atwater. Cox, a four-to-three decision, provoked a strong and well-reasoned dissent that directly pointed out that "the majority never explains how its decision is consistent with the Supreme Court's recent decision in Atwater." Cox, 202 Ill. 2d at 475 (Thomas, J., dissenting). Given that this point was directly expressed to the majority, it is doubtful that the Cox majority was unaware of Atwater when it wrote the passage quoted in the preceding paragraph. It is more likely that the majority in Cox considered and rejected Atwater.[1] We note that Atwater itself, a five-to-four decision, is hardly uncontroversial. Our supreme court appeared to repudiate Cox in Gonzalez when it wrote, "The fact that most traffic stops proceed like 'Terry stops,' and are thus analyzed under Terry principles, does not mean that where a stop is based on probable cause, an arrest of the driver or passenger is necessarily prohibited under the fourth amendment." Gonzalez, 204 Ill. 2d at 228 n.2. After Gonzalez was decided, the supreme court issued Jones, 215 Ill. 2d 261, in which an officer stopped the defendant for driving a vehicle with inoperable taillights. The Jones court, after recognizing that the officer had probable cause to stop the defendant for this offense, held, "At this point, without more, Gebke lacked the authority to search defendant. Stopping an automobile for a minor traffic violation does not, by itself, justify a

---

[1]The dissent's attempt to invoke the lock-step doctrine by citing People v. Caballes, 221 Ill. 2d 282, 316 (2006), is misplaced. While we agree that in most situations the lock-step rule controls, where, as here, the supreme court has apparently considered a federal rule and rejected it, we do not believe it proper to apply that general principle to contradict an express holding of our supreme court. If we were writing on a blank slate, we would undoubtedly follow Atwater; however, we are not and hence must follow the decisions of our supreme court.

search of the detainee's person or vehicle. The officer must reasonably believe that he or she is confronting a situation more serious than a routine traffic violation." Jones, 215 Ill. 2d at 271. The right to search accompanies an arrest; after all, the doctrine that allows such searches is known as the "search-incident-to-arrest exception." See, e.g., People v. Miller, 354 Ill. App. 3d 476, 479 (2004). That the officer in Jones lacked the authority to conduct a search necessarily means that he also lacked the authority to arrest the defendant. The application of this rule in Jones is a clear reaffirmation of Cox, any conflicting language in the intervening Gonzalez case notwithstanding. The dissent dismisses all of this as "disingenuous," but never explains why these rather plain statements of law from Cox and, more importantly, Jones, should be ignored. Slip op. at 30. We say "more importantly" because Jones is the supreme court's most recent case that addresses this issue. The dissent cannot consistently maintain both that Gonzalez overruled Cox sub silentio and that Jones did not reaffirm Cox.

In any event, since Jones is the latest pronouncement from our supreme court, we will follow it, as, indeed, we are bound to do (People v. Batrez, 334 Ill. App. 3d 772, 778 (2002)). The salient point in Jones for our purposes is that a traffic stop presents a different situation from an arrest for a more serious offense. Though driving with a revoked license is related to operating a vehicle, it is a much more serious matter than, for example, an equipment violation and therefore warrants a greater intrusion upon the offender's liberties. By way of analogy, consider the following. Suppose that a police officer stops a suspect driving away from the scene of a bank robbery. Assume also that the officer has probable cause to believe that the suspect has robbed the bank. The mere fact that the stop occurred while the suspect was driving a vehicle in no way limits the officer's ability to act, for this is not a traffic stop. The officer may simply arrest the suspect and conduct a search incident to

arrest. See People v. Wither, 321 Ill. App. 3d 382, 384 (2001), quoting New York v. Belton, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864 (1981) ("Thus, when an officer has made a 'lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile' ").

In a more familiar context, the distinction becomes obvious between having either reasonable suspicion or probable cause for a traffic offense (which is controlled by Gonzalez, Terry, and the like) and probable cause for a more serious offense (which is not). A common sort of case that the courts of this state confront is where an officer initiates a traffic stop and then observes contraband in a vehicle. In fact, the situation that confronted the court in Jones, 215 Ill. 2d 261, provides a concise example. In that case, a police officer stopped the defendant because the taillights on the vehicle the defendant was driving were not working. Jones, 215 Ill. 2d at 271. The court stated:

> "In this case, Gebke observed that the vehicle which [the] defendant was driving had
> inoperable taillights, a clear violation of our vehicle code. [Citations.] Thus, Gebke's initial
> stop of defendant's vehicle was supported by probable cause and, therefore, was justified at
> its inception. [Citation.] At this point, without more, Gebke lacked the authority to search
> [the] defendant. Stopping an automobile for a minor traffic violation does not, by itself,
> justify a search of the detainee's person or vehicle. The officer must reasonably believe that
> he or she is confronting a situation more serious than a routine traffic violation." Jones, 215
> Ill. 2d at 271.

The officer then observed in the defendant's shirt pocket a small wooden box, which he recognized as drug paraphernalia. Jones, 215 Ill. 2d at 271. The officer then properly seized and opened the box, discovering cannabis. Jones, 215 Ill. 2d at 282. Having discovered contraband, probable cause

existed that justified the arrest of the defendant and the search of the vehicle. Jones, 215 Ill. 2d at 282. Thus, once probable cause existed for a drug offense rather than a traffic offense, the officer was no longer constrained by Terry and its progeny. See also People v. Walters, 256 Ill. App. 3d 231, 238 (1994) ("When Hourigan approached the vehicle, he observed marijuana on the front seat of the automobile. Since the marijuana was observed in plain view, Hourigan had probable cause to seize the contraband and place the suspects under arrest. [Citation.] Thus, the police officers were justified in conducting a further search of the vehicle incident to the arrest, including containers the police reasonably believed might contain contraband. [Citation]"). In this case, of course, we are dealing with probable cause to believe that defendant was operating a vehicle while his license was revoked.

Driving while one's license is revoked is a more serious offense and warrants a greater intrusion than driving without a valid registration sticker displayed. Numerous cases have held that a search incident to arrest is justified where a defendant is operating a vehicle without a driver's license. See United States v. Robinson, 414 U.S. 218, 234-35, 38 L. Ed. 2d 427, 440, 94 S. Ct. 467, 476 (1973) (search incident to arrest justified by arrest for driving with a revoked license); People v. Perry, 204 Ill. App. 3d 782, 787 (1990) ("We have already determined that the stop based on the defendant's failure to have a rear registration plate was valid. After defendant's failure to produce a valid driver's license in violation of section 6--112 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 6--112), the custodial arrest at the scene was both legal and appropriate"); People v. Cannon, 18 Ill. App. 3d 781, 785 (1974) ("Upon ascertaining that the driver had no valid license in his possession, it then became the right and duty of the officer to make a custodial arrest for this additional misdemeanor and consequently he had the legal right to effect a complete search of the

driver's person"); cf. People v. Gilyard, 124 Ill. App. 2d 95, 102 (1970) ("The failure of Shumate to produce his driver's license at the request of the arresting officers was a circumstance sufficient to warrant an officer's reasonable belief that he may be dealing with a criminal rather than a mere traffic violator"). If a search incident to arrest is justified for driving with a revoked license, a fortiori, a custodial arrest is justified. Therefore, defendant's admission that he was driving with a revoked license provided probable cause for the police to take him into custody. In other words, the encounter was no longer a Terry stop.

Similarly, cases that do not deal with traffic stops confirm that a Terry stop terminates when probable cause for an arrest develops. In People v. Herron, 89 Ill. App. 3d 1048, 1064 (1980), the court wrote:

"After the stop is made and the suspect has been questioned and frisked for weapons one of two things can happen. First, the officer can find that there is probable cause the suspect committed the crime, in which case the officer can arrest him. Second, the officer can find there is not probable cause, in which case the officer must release the defendant."

Since a greater intrusion on an individual's liberty is allowed once probable cause develops, it follows that an officer's actions are no longer limited by the dictates of Terry and its progeny. Moreover, as the Herron court held that an arrest can, rather than must, be made, it is apparent that a formal arrest is not necessary to alter the relationship between the officer and the individual. It is the existence of probable cause that alters the relationship.

Thus, unlike the dissent, we find it of no moment that defendant was not formally arrested at the time he admitted ownership of the narcotics and that O'Brochta later ran defendant's license information to confirm that defendant's license was revoked. It is, of course, well established that an

officer's subjective intentions and beliefs have no bearing on the question of whether a seizure is justified. People v. Moss, 217 Ill. 2d 511, 529 (2005), quoting Terry, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880, quoting Carroll v. United States, 267 U.S. 132, 162, 69 L. Ed. 543, 555, 45 S. Ct. 280, 288 (1925) ("An officer's subjective feelings may not dictate whether a pat-down search is valid or invalid. [Citation.] Rather, the test is objective: Would the facts available to the officer at the moment of the search ' "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' "). Regardless of what O'Brochta and Gilhooley believed at any given time, when defendant admitted committing an offense more serious than a traffic offense, probable cause existed for a greater intrusion on his fourth amendment interests.

The dissent places great emphasis on the fact that a formal arrest did not occur until after the complained-of questioning, stating, "Had they arrested defendant on either charge before asking him the question about drugs, the Gonzalez test would not apply, as the question would have arisen after an arrest, not during the course of a traffic stop." Slip op. at 30. This reasoning runs contrary to a number of cases, which we set forth in the following paragraphs, that deal with the search-incident-to-arrest doctrine. These cases are illuminating because they show that the relationship between a law enforcement officer and a suspect may change such that a search is warranted despite the lack of a formal arrest. Further, what allows the greater intrusion is the authority to arrest, which is, of course, dependent on probable cause. Once that probable cause develops, a law enforcement officer may take actions that would be outside the scope of a Terry stop regardless of whether a formal arrest has been made. See People v. Tillman, 355 Ill. App. 3d 194, 200 (2005) ("A search incident to a valid arrest is proper if the search is conducted either contemporaneously or immediately prior to the arrest" (emphasis added)).

In Rawlings v. Kentucky, 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556 (1980), the United States Supreme Court recognized in an analogous situation that the development of probable cause allows for a greater intrusion even though an officer does not formally arrest a suspect. There, the Court wrote:

"Like the Supreme Court of Kentucky, we have no difficulty upholding this search as incident to petitioner's formal arrest. Once petitioner admitted ownership of the sizable quantity of drugs found in Cox's purse, the police clearly had probable cause to place petitioner under arrest. Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." Rawlings, 448 U.S. at 110-11, 65 L. Ed. 2d at 645-46, 100 S. Ct. at 2564.

Coincidentally, probable cause in Rawlings, as in the present case, arose from an admission by the defendant. In any event, the lesson from Rawlings relevant here is that, once probable cause develops, the police are no longer limited by the constraints of Terry. Despite the fact that no formal arrest had yet been made, the Rawlings court held that a search incident to an arrest was justified. Such a search strikes us as far more intrusive than simply detaining defendant for a very short time, putting a few questions to him, and making him wait a brief moment while O'Brochta spoke with the passenger. See also United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991); Commonwealth v. Elliott, 376 Pa. Super. 536, 551, 546 A.2d 654, 661 (1988) ("An officer may briefly detain a suspect and then proceed to conduct an actual search if the facts gleaned during that detention ripen into probable cause to arrest").

Finally, we note that in People v. Erb, 128 Ill. App. 2d 126 (1970), this court rejected the defendant's argument that the failure of the police to formally arrest her invalidated a search where probable cause existed to detain her. There, we wrote:

"Miss Erb places considerable emphasis on a contention that she was not arrested until after the search of her purse at the police station. We do not deem this material even if it were justified by the facts. Since the police had probable cause in our opinion to detain her and undertake a search at the arrest site and later of her purse at the station [citation], the probable cause to arrest existed at the scene, and the arrest may be considered to have been made at that time even though formal charges may not have been brought until later." Erb, 128 Ill. App. 2d at 134.

Here, we again find the existence of probable cause justifying more intrusive action by the police even though no formal arrest had yet been made.

Accordingly, we conclude that after defendant admitted that he was driving while his license was revoked--an offense sufficient to justify a search incident to arrest (Perry, 204 Ill. App. 3d at 787)--the Terry portion of his encounter with the police was over. The encounter between defendant and the police was no longer a traffic stop. The question of whether the officers' questions changed the nature of the stop, for the purposes of Terry, is therefore moot. As the Seventh Circuit Court of Appeals aptly noted, "[A]n officer may interrogate a person in prison on one offense about the possibility that the inmate committed another. This is normal and, as far as we can tell, of unquestioned propriety as far as the fourth amendment is concerned, whether or not the officer has probable cause to believe that the inmate committed any other crime. The prisoner has rights under the fifth amendment and perhaps the sixth. He can refuse to answer incriminating questions and may

be entitled to counsel." United States v. Childs, 277 F.3d 947, 950-51 (7th Cir. 2002). Similarly, once a person is in custody, any discussion about the scope of a Terry stop is beside the point. In this case, since defendant's admission created probable cause to believe that defendant committed an offense more serious than is associated with a traffic stop and sufficient to justify a custodial arrest, cases like Gonzalez, which deal with traffic stops, provide no guidance, and, in turn, Terry provides no basis to suppress either defendant's statement that the drugs were his or the physical evidence recovered from the car.

Before leaving this issue, we note that the dissent chastises us for the purported unworkability of the rule that we apply in this case and to this end provides extensive quotations from Justice Souter's majority opinion in Atwater. Slip op. at 32-33. To this, we set forth Justice O'Connor's response:

"The majority insists that a bright-line rule focused on probable cause is necessary to vindicate the State's interest in easily administrable law enforcement rules. [Citation.] Probable cause itself, however, is not a model of precision. 'The quantum of information which constitutes probable cause--evidence which would "warrant a man of reasonable caution in the belief" that a [crime] has been committed--must be measured by the facts of the particular case.' [Citation.] The rule I propose--which merely requires a legitimate reason for the decision to escalate the seizure into a full custodial arrest--thus does not undermine an otherwise 'clear and simple' rule. [Citation.]

While clarity is certainly a value worthy of consideration in our Fourth Amendment jurisprudence, it by no means trumps the values of liberty and privacy at the heart of the Amendment's protections. What the Terry rule lacks in precision it makes up for in fidelity

to the Fourth Amendment's command of reasonableness and sensitivity to the competing values protected by that Amendment. Over the past 30 years, it appears that the Terry rule has been workable and easily applied by officers on the street." Atwater, 532 U.S. at 366, 149 L. Ed. 2d at 585, 121 S. Ct. at 1564 (O'Connor, J., dissenting).

More fundamentally, even if the dissent is correct about the workability of the rule, we lack the authority to overrule Jones. Whatever the merits of the rule, Jones is our supreme court's latest pronouncement on the issue. Finally, to the extent the dissent suggests the police are being hamstrung (slip op. at 27 ) by this rule, we make two observations. First, if in doubt, police need only remain within the bounds of Terry as articulated in Gonzalez, which is exactly where the dissent's position would leave them anyway. Second, we are affirming a conviction here. It is the dissent, based on its rejection of Jones, that is advocating reversal.

Defendant further argues that his statement should have been suppressed because it was coerced. Defendant relies not on the absence of Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)); rather, he claims that his statements were coerced in fact. See People v. Salgado, 263 Ill. App. 3d 238, 249 (1994). In determining whether a confession is the result of coercion, the relevant test is "whether the individual made his confession freely and voluntarily, without compulsion or inducement of any kind, or whether the individual's will was overborne at the time of the confession." People v. Morgan, 197 Ill. 2d 404, 437 (2001). Defendant asserts that his admission to ownership of the narcotics was the result of the police threatening him that, unless he confessed, the passenger, who was defendant's girlfriend and with whom his child lived, would also go to jail and the child would be taken into protective custody. The problem with this argument is that its only basis is defendant's testimony, and the trial court expressly found that

his testimony was not credible. Our review of the record indicates that this finding was not contrary to the manifest weight of the evidence, and defendant does not suggest why it should be rejected. Hence, defendant's argument lacks factual support, and we therefore reject it.

### B. Proof of Guilt

Defendant also contends that he was not proven guilty beyond a reasonable doubt. In assessing such a contention, we must view the record in the light most favorable to the State and, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. People v. Sturgess, 364 Ill. App. 3d 107, 115 (2006). Moreover, it is the role of the trier of fact to assess the credibility of witnesses, assign weight to evidence, and draw inferences from evidence. People v. Matysik, 363 Ill. App. 3d 1107, 1112 (2006).

Defendant argues that no evidence corroborated his statement that the drugs were his, as no one ever saw him in possession of the narcotics--which were found in another's possession--and that the statement was coerced. He maintains that his statement was coerced for the same reason set forth above regarding his child being placed in protective custody. Defendant cites case law setting forth the corpus delicti rule, which holds that uncorroborated confessions are suspect. See People v. Willingham, 89 Ill. 2d 352, 359 (1982). His argument, however, does not rely on that rule, presumably because drugs were actually recovered and his conviction does not rest on a bare confession. A confession needs only minimal corroboration to satisfy this rule, as it is enough that there be some evidence, independent of the confession, that tends to show that the crime did occur. People v. Phillips, 215 Ill. 2d 554, 576 (2005). Moreover, the corroborating evidence need not constitute proof beyond a reasonable doubt that the crime occurred. Phillips, 215 Ill. 2d at 576. Thus, the recovery of the narcotics would satisfy the corpus delicti rule.

Again, defendant does not rely on the corpus delicti rule directly; he uses it to impugn his statement and essentially argue that it should have been given no weight. Defendant's argument suffers from two flaws. First, as noted above, it is the trial court's function to assign weight to evidence. More fundamentally, Gilhooley specifically denied at trial that anything was said about both defendant and his passenger going to jail or about defendant's child being taken into protective custody. In support of his argument, defendant can again cite only his own testimony. Just as it did following the hearing on defendant's suppression motion, the trial court found at trial that defendant lacked credibility. We cannot say that this finding is erroneous, and defendant gives us no reason why we should. Accordingly, we conclude that defendant was proven guilty beyond a reasonable doubt.

### III. CONCLUSION

In light of the foregoing, we affirm the judgment of the circuit court of Du Page County finding defendant guilty of possession of a controlled substance (720 ILCS 570/402(c) (West 2002)).

Affirmed.

BOWMAN, J., concurs.

JUSTICE CALLUM, dissenting:

In People v. Gonzalez, 204 Ill. 2d 220, 235 (2003), our supreme court announced a straightforward test for "determining whether police questioning during the course of a traffic stop satisfies Terry's scope requirement." Further, the court noted that the test applies "even in the presence of probable cause." Gonzalez, 204 Ill. 2d at 228. Here, the police asked defendant a question during a traffic stop, and defendant argues that the question violated Terry's scope requirement. Appropriately enough, the majority starts to apply the Gonzalez test. But then the majority declines to complete it. Despite the supreme court's admonition about the irrelevance of

probable cause, the majority determines that the test no longer applies when probable cause exists "for something more than a traffic violation." Slip op. at 14. In such a case, the majority says, the defendant "could be taken into custody," and the police are no longer bound by Terry's scope requirement. Slip op. at 14.

As law, this is bad, as it clearly contradicts not only Gonzalez but also an explicit holding of the United States Supreme Court. As policy, though, it is even worse, replacing the Gonzalez test with an unworkable rule that will hamstring the police and the courts. Accordingly, I dissent.

I will begin by applying the Gonzalez test--all of it--and then I will explain why the majority errs in refusing to do so. First, however, a review of the factual context. When the police saw that defendant was driving a vehicle with an expired registration sticker, they had probable cause to believe that defendant was committing a criminal offense, and they effected a valid traffic stop. See 625 ILCS 5/3--413(f) (West 2002) (prohibiting, without specific penalty, the operation of a vehicle with an expired registration sticker); 625 ILCS 5/16--104 (West 2002) (an Illinois Vehicle Code violation for which no specific penalty is provided is a petty offense); Black's Law Dictionary 1146 (6th ed. 1990) (a petty offense is a "minor crime"); People v. Orsby, 286 Ill. App. 3d 142, 146-47 (1996) (officers' observation of a minor traffic violation provided probable cause to effect a traffic stop). When defendant admitted to the police that his license had been revoked, the police had probable cause to believe that defendant had committed a second criminal offense. See 625 ILCS 5/6--303(a) (West 2002) (driving while license is revoked is a Class A misdemeanor); People v. Anderson, 112 Ill. App. 3d 270, 273 (1983) (defendant's admission alone provided probable cause). The police then asked defendant whether there were any drugs in his vehicle. Only later was he arrested.

Because defendant had not been arrested, the question about drugs was obviously "questioning during the course of a traffic stop." Gonzalez, 204 Ill. 2d at 235. Thus, to determine whether the question satisfies Terry's scope requirement, we must apply the Gonzalez test. That test consists of three prongs:

"[W]e must consider, as an initial matter, whether the question is related to the initial justification for the stop. If the question is reasonably related to the purpose of the stop, no fourth amendment violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no fourth amendment violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop." Gonzalez, 204 Ill. 2d at 235.

The majority applies--and applies correctly--the first two prongs. I agree that the question about drugs was completely unrelated to defendant's driving with an expired registration sticker. I further agree that the question was not supported by an independent reasonable suspicion. As to the third prong, the majority points out, and I again agree, that the record shows nothing more than a de minimis prolonging of the stop and that, therefore, we must determine whether the question changed the stop's fundamental nature. The majority, of course, avoids this determination, but the answer is that the question indeed changed the fundamental nature of the stop. This court has noted, repeatedly and unassailably, that an unrelated and unsupported question about contraband " 'convert[s] a routine traffic stop into a fishing expedition.' " People v. Parra, 352 Ill. App. 3d 584, 589 (2004), quoting

People v. Hall, 351 Ill. App. 3d 501, 505 (2004).  Thus, according to the Gonzalez test, the question violated Terry's scope requirement.

The majority avoids this determination by holding as follows.  The Gonzalez test applies to questioning during a traffic stop when the police have probable cause to believe that the defendant has committed only "a traffic violation," such as driving with an expired registration sticker.  However, when probable cause exists "for something more than a traffic violation," such as, apparently, driving while one's license is revoked, the defendant "could be taken into custody," and thus the Gonzalez test does not apply.  Slip op. at 14.

What the majority refuses to acknowledge is that a defendant may be taken into custody when probable cause exists for any criminal violation. This is not an open question.  In Atwater v. City of Lago Vista, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001), the United States Supreme Court addressed the constitutionality of an arrest for a minor crime, such as "a fine-only [i.e., petty] traffic offense."  Atwater, 532 U.S. at 348, 149 L. Ed. 2d at 573, 121 S. Ct. at 1554; see 730 ILCS 5/5--1--17 (West 2002) (a petty offense is punishable by a fine only).  The Court held that, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Atwater, 532 U.S. at 354, 149 L. Ed. 2d at 577, 121 S. Ct. at 1557.  Our state constitution provides no greater protection against search and seizure than does the fourth amendment.  See People v. Caballes, 221 Ill. 2d 282, 316 (2006).  Accordingly, our supreme court acknowledged Atwater in Gonzalez, stating that Terry's scope requirement applies to questioning during a traffic stop even when the police have probable cause to arrest.  Gonzalez, 204 Ill. 2d at 228 n.2.  The majority's reliance on People v. Cox, 202 Ill. 2d 462 (2002), and People v. Jones, 215 Ill. 2d 261 (2005), is

disingenuous, as the majority cannot seriously contend that in those cases our supreme court somehow determined that Atwater is not the law in this state.

As a result, the premise of the majority's argument is completely invalid. Yes, the police could have arrested defendant for driving while his license was revoked. But they also could have arrested defendant for driving with an expired registration sticker. Had they arrested defendant on either charge before asking him the question about drugs, the Gonzalez test would not apply, as the question would have arisen after an arrest, not during the course of a traffic stop. However, the question arose before the arrest, so the encounter was still a traffic stop, the Gonzalez test applies, and the question violated Terry's scope requirement.

The majority's bank-robbery analogy is thoroughly unavailing. The majority observes that, when a suspect is driving away from the scene of a bank robbery, probable cause permits the police to "simply arrest the suspect and conduct a search incident to arrest." Slip op. at 16-17. This is elementary, but it has nothing to do with the nature of the offense. When the police have probable cause to believe that a suspect has committed any offense, such as driving with an expired registration sticker, they too may "simply arrest the suspect and conduct a search incident to arrest." What they may not do is stop the suspect, ask him an unrelated and unsupported question about a wholly separate offense, and then arrest him only after their fishing is done.

The majority only compounds its error when it observes that "cases that do not deal with traffic stops confirm that a Terry stop terminates when probable cause for an arrest develops." Slip op. at 19. There are two obvious problems with this line of analysis. First, Gonzalez is a case that does deal with traffic stops, and it says that Terry principles apply to such stops "even in the presence of probable cause." Gonzalez, 204 Ill. 2d at 228. Second, again, in this case probable cause for an

arrest developed <u>at the outset</u>, when the police saw defendant's expired registration sticker.  If probable cause for an arrest terminates a traffic stop, a proposition that <u>Gonzalez</u> expressly rejects, then this was <u>never</u> a traffic stop.  Yet the majority insists that the encounter "was no longer a traffic stop" (slip op. at 22) only after the police had probable cause to arrest defendant for "an offense more serious than is associated with a traffic stop" (slip op. at 23).  There is simply no logic or authority to support this.

Strangely, the majority closes with an assertion that undermines its entire analysis.  "[O]nce a person is in custody, any discussion about the scope of a <u>Terry</u> stop is beside the point."  Slip op. at 23.  I could not agree more.  If the police had questioned defendant about drugs after taking him into custody, I would gladly concede that the traffic stop was over and that <u>Terry</u>'s scope requirement no longer applied.  But although the police <u>could have</u> taken defendant into custody, at any point during the traffic stop, they declined to do so until after they questioned him about drugs.  Under the clear holding of <u>Gonzalez</u>, their questioning occurred during the course of a traffic stop, and it violated <u>Terry</u>'s scope requirement.

Thus, the majority's holding is legally defective, but unfortunately this is only the beginning.  I do not enjoy imagining what the police and the courts will endure as they try to apply our rule.  Even were I to agree that only "something more than a traffic violation" may justify an arrest, I would have no idea how to explain where the line is between  "a traffic violation" and "something more."  Of course, neither would the United States Supreme Court, which invoked such practical implications in rejecting such lines.

In Atwater, the defendant submitted that arrests should be justified only for offenses "for which conviction could result in commitment" and not for " 'fine-only' " offenses. Atwater, 532 U.S. at 348, 149 L. Ed. 2d at 573, 121 S. Ct. at 1554. The Court responded:

"The trouble with this distinction, of course, is that an officer on the street might not be able to tell. It is not merely that we cannot expect every police officer to know the details of frequently complex penalty schemes, [citation] but that penalties for ostensibly identical conduct can vary on account of facts difficult (if not impossible) to know at the scene of an arrest." Atwater, 532 U.S. at 348, 149 L. Ed. 2d at 573, 121 S. Ct. at 1554.

The defendant qualified her proposal by noting that arrests should be justified for even fine-only traffic offenses "where 'necessary for enforcement of the traffic laws or when [an] offense would otherwise continue and pose a danger to others on the road.' " Atwater, 532 U.S. at 349, 149 L. Ed. 2d at 574, 121 S. Ct. at 1555. The Court responded:

"The proviso only compounds the difficulties. Would, for instance, either exception apply to speeding? *** [Atwater asserts that] 'it would not be reasonable to arrest a driver for speeding unless the speeding rose to the level of reckless driving.' [Citation.] *** [But] why, as a constitutional matter, should we assume that only reckless driving will 'pose a danger to others on the road' while speeding will not?" Atwater, 532 U.S. at 349, 149 L. Ed. 2d at 574, 121 S. Ct. at 1555.

The Court's conclusion is eerily applicable to our present discussion:

"There is no need for more examples to show that Atwater's general rule and limiting proviso promise very little in the way of administrability. *** Atwater's rule therefore would not only place police in an almost impossible spot but would guarantee increased litigation

over many of the arrests that would occur. For all these reasons, Atwater's various distinctions between permissible and impermissible arrests for minor crimes strike us as 'very unsatisfactory line[s]' to require police officers to draw on a moment's notice." Atwater, 532 U.S. at 350, 149 L. Ed. 2d at 574-75, 121 S. Ct. at 1555.

Here, the majority draws just such an "unsatisfactory line," between "a traffic violation" and "something more." If, and only if, the police have probable cause to believe that a defendant has committed "something more," they may arrest the defendant, and their questioning is not subject to Terry's scope requirement. However, as to what is "a traffic violation" and what is "something more," the majority provides no guidance at all. Driving with an expired registration sticker and driving while one's license is revoked are both prohibited by the Illinois Vehicle Code. So why is the former "a traffic violation" while the latter is not? I agree that the latter is "much more serious" (slip op. at 16), but why doesn't this mean only that the latter is a "much more serious" traffic violation? And, if I may repeat the Supreme Court's question, what about speeding? Speeding is obviously "associated with a traffic stop" and thus must be "a traffic violation." But surely the majority would not suggest that, if a person drives 80 miles per hour through a 20-mile-per-hour zone, the police may not arrest the driver to remove him from the road. So is excessive speeding "something more"? If so, how excessive must the speeding be?

I have no idea how to answer these questions. The point, though, is that there are no answers that would make the majority's a workable rule. The majority's holding, in my view, is certain to produce mass confusion--and worse--among the police and the courts of this state.

In sum, this decision's legal inadequacy is surpassed only by its practical impossibility. Accordingly, I respectfully dissent.