FOURTH DIVISION
March 2, 2006

No. 1-04-2191

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

CATHERINE STURGESS,

Defendant-Appellant.

Appeal from the
Circuit Court of
Cook County.

Nos. 31959619,
31959620

Honorable
James P. O'Malley,
Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court

Defendant Catherine Sturgess appeals her convictions for driving under the influence of alcohol DUI and failure to reduce speed to avoid an accident, as well as her sentence to two years' conditional discharge and fine of 2,500. For the reasons that follow, we affirm in part and reverse in part.

Defendant was arrested and charged with the aforementioned offenses on August 18, 2002. Prior to trial, she filed a motion to quash arrest and suppress evidence, alleging that the arresting officer lacked probable cause to suspect her of illegal activity. The circuit court conducted a hearing on the motion simultaneous to a bench trial.

At trial, Dana Banger testified that on August 18, 2002, she was in her vehicle traveling southbound on Interstate 57 near 163rd Street in Oak Forest when the vehicle in front and to the right of hers swerved into her lane. Banger steered to avoid a collision and her vehicle came to rest in a construction zone in the northbound lanes.

Illinois State Police Trooper Tyler testified that he was called to the scene of the accident and observed Banger's vehicle in the northbound lanes and a tan Dodge Intrepid obstructing

traffic in the southbound lanes. After speaking with Banger, Tyler requested medical assistance. He noted extensive damage to the Intrepid's right front bumper and observed defendant attempting to move the vehicle off the highway. He asked defendant whether she was injured and required medical attention. Defendant replied that she did not. After defendant moved and exited her vehicle, Tyler detected a strong odor of alcohol on her breath and noted that her eyes were bloodshot and her speech slurred. Tyler requested that another officer transport defendant to the nearest police station and set about clearing the scene of the accident.

Trooper Tyler stated that when he arranged for defendant's transport, defendant was not placed under arrest and had not been issued any Miranda warnings. At the police station, Tyler interviewed defendant and asked whether she had been drinking. Defendant replied that she had not and submitted to sobriety tests. During the tests, Tyler observed that defendant had an odor of alcohol on her breath, swayed when she stood up, at one point became very emotional, and lost her balance several times. Tyler opined that defendant failed all three of the sobriety tests he administered.

Trooper Tyler then asked defendant whether she would submit to a preliminary breath test and advised her that she was under arrest for DUI. Tyler advised her of her Miranda rights and issued citations for DUI and for failure to reduce speed to avoid an accident. Defendant refused to be interviewed any further and refused to submit to a Breathalyzer test. Tyler opined that defendant, at the time of the arrest, was under the influence of alcohol on the bases of her demeanor, comportment, and behavior, as well as his 10 years' experience in law enforcement and his observation during that span of hundreds of individuals under the influence of alcohol.

On cros- examination, Trooper Tyler stated that when he instructed defendant to move

her vehicle off the highway, she did so without incident. He never observed her operate her vehicle prior to his arrival at the scene of the accident. He did not detect the scent of alcohol in her breath the first time he spoke with her and asked whether she was injured. When defendant asked Tyler whether she could call her son to pick her up from the scene of the accident, Tyler instructed her to ride in the squad car of a fellow officer. During the interview, defendant was distraught over having had her car stolen and she was worried about her husband's illness.

On redirect, Trooper Tyler stated that when he advised defendant to ride to the police station with another officer rather than her son, he wished to keep the area clear of additional personnel because it was highly congested with traffic.

Illinois State Police Sergeant Robert Evans testified that he assisted Trooper Tyler in securing the accident scene and that Tyler suspected that defendant was under the influence of alcohol. Tyler asked him to place defendant in his squad car, and Evans transported her to the Oak Forest police station. Evans neither handcuffed defendant nor advised her of her *Miranda* rights; he never indicated to her that she was under arrest.

The State rested and the circuit court denied defendant's motion to quash.

Defendant testified that on the evening of her arrest, she had attended a church service in Harvey and was on her way home when the driver of another vehicle drove very close to hers in a harassing manner and forced her vehicle off the road and into a guardrail. Other motorists stopped to ask whether she was all right and informed her that the police had been called. Trooper Tyler arrived and asked to see her license and registration, then left for about 15 minutes. Meanwhile, defendant called her son on her cellular phone and asked that he take her to a doctor. Tyler returned and told her that she would be transported to the police station and

that her son could meet her there.

Defendant arrived at the station and waited at a desk for about 15 minutes. Tyler arrived and informed her that he could not return her license and that her vehicle had been totaled. Defendant asked for and was given permission to call her son to pick her up at the station. Tyler then began writing tickets and informed defendant that he planned to administer some sobriety tests. Defendant responded that she would not submit to any tests and that she was not under the influence of alcohol. She never performed any sobriety tests and accepted the citations.

On cross-examination, defendant stated that she was issued a ticket for speeding but could not produce a copy of it. She again denied participating in any sobriety tests.

The circuit court found defendant guilty on each count. An alcohol and drug evaluation summary (ADES) completed prior to sentencing revealed that defendant had been arrested for DUI on two prior occasions, in 1997 and 1999, and that she had a total household income of $11,000 per year. The circuit court sentenced defendant to two years' conditional discharge and 30 days' participation in the Sheriff's Work Alternative Program (SWAP) on the DUI charge. The State recognized defendant's inability to pay the accompanying $2,500 fine and recommended that the fine be satisfied by defendant's participation in SWAP. The court accepted the recommendation but imposed a fine of $1,046.50 to cover fees and court costs incurred by the State in prosecuting the offenses and mandatory fees pursuant to victims' assistance and subsequent offenses statutes.

On appeal, defendant contends that the trial court's denial of her motion to quash arrest was erroneous, that the State failed to prove her guilty of DUI beyond a reasonable doubt, that the State failed to prove her guilty of failing to reduce speed to avoid an accident beyond a

4

reasonable doubt, and that the trial court erred in imposing the maximum fine and court costs.

We deal first with defendant's contentions as to the propriety of the trial court's denial of her motion. Defendant argues that the circuit court's denial was erroneous because the evidence presented at trial demonstrated that defendant was illegally detained and that her performance on the ensuing field sobriety tests could not be used as evidence against her because it was unlawfully procured. She asserts that her transportation to the Oak Forest police station in a squad car constituted an involuntary seizure without probable cause.

Our review of a circuit court's decision on a motion to quash arrest and suppress evidence presents questions of both law and fact. People v. Pitman, 211 Ill. 2d 502, 512 (2004). We will not disturb the circuit court's findings of fact on review unless they are against the manifest weight of the evidence. Pitman, 211 Ill. 2d at 512. However, this court may undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions in deciding what relief, if any, should be granted. Pitman, 211 Ill. 2d at 512. Therefore, we review *de novo* the ultimate question of whether the evidence should have been suppressed. Pitman, 211 Ill. 2d at 512.

Defendant alleges that her transportation in a squad car from the scene of the accident to the police station amounted to an unlawful arrest in that Trooper Tyler lacked probable cause to place her in custody and that any evidence gathered during their subsequent conversations was illegally obtained and therefore inadmissible. She asserts that Tyler and the other officers' conduct was indicative of a seizure in that she was not allowed to call her son to come and pick her up at the scene of the accident, she was taken to the police station in a marked squad car, and she was forced to wait there nearly one hour until Tyler arrived to conduct the sobriety tests.

1-04-2191

She contends that a reasonable person in her position would have believed that she was not free to leave the officers' presence, and she concludes that the circumstances constituted an unlawful seizure in violation of her fourth amendment rights and as such mandated that any evidence gathered as a result should have been excluded.

Defendant relies on Dunaway v. New York, 442 U.S. 200, 60 L . Ed.2d 824, 99 S. Ct. 2248 (1979), for the propositions that the seizure and transport of a defendant without a warrant or probable cause to arrest violates the fourth amendment and that detention of a defendant by police officers solely for the purpose of custodial interrogation amounts to an illegal arrest.

The State counters that defendant was neither unlawfully seized nor placed under arrest at the scene. It argued at trial and argues again on appeal that Tyler and Evans, in transporting defendant from the side of the highway to the police station, were attempting to ensure that she was safely removed from the scene of the accident and a very congested interstate. The State also maintains that Tyler had probable cause to suspect that defendant had been driving under the influence of alcohol due to the scent of alcohol on her breath, her slurred speech, and her swaying, and that he placed her in a squad car for her own safety in light of the heavy traffic present after the accident occurred, did not place her in handcuffs, and did not read her any Miranda warnings. The State also points out that while at the station, defendant was not restrained, was not placed in an interview room, and was allowed to make a phone call, and it concludes that no indicia of arrest were present before defendant submitted to sobriety tests.

Illinois recognizes three distinct tiers of encounters between citizens and police officers. People v. Smith, 214 Ill. 2d 338, 351 (2005). The first involves the arrest of a citizen, which must be justified by probable cause; the second involves the "Terry stop," where an officer

6

temporarily detains and questions a citizens and which must be supported by reasonable suspicion of criminal activity (see Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)); and the third is generally classified as the community caretaking function, which does not require either probable cause or reasonable suspicion. Smith, 214 Ill. 2d at 352. The latter two scenarios usually entail consensual encounters between police and citizens involving the safety of the public, do not involve coercion or forcible detention, and therefore do not implicate a citizen's fourth amendment rights. People v. Gonzalez, 204 Ill. 2d 220, 224 (2003); People v. Murray, 137 Ill. 2d 382, 387 (1990).

A citizen is seized when, by means of physical force or show of authority, his or her freedom of movement is restrained. Smith, 214 Ill. 2d at 352; United States v. Mendenhall, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). In determining whether a seizure occurred, we consider whether, in light of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. People v. Brownlee, 186 Ill. 2d 501, 517 (1999). Factors indicative of a seizure may include: (1) the threatening presence of several police officers; (2) the display of a weapon by an officer; (3) some physical touching of the individual involved in the encounter; and (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. Mendenhall, 446 U.S. at 554-55, 64 L. Ed.2d at 509, 100 S. Ct. at 1877. Absent evidence of these factors, otherwise inoffensive contact between a police officer and a citizen cannot, as a matter of law, amount to a seizure. Mendenhall, 446 U.S. at 555, 64 L. Ed.2d at 509-10, 100 S. Ct. at 1877.

Furthermore, Illinois courts have held that, where a defendant voluntarily accompanies

7

an officer to the police station, there is no formal declaration of arrest, and the defendant is not searched, handcuffed, fingerprinted, or photographed, the defendant is neither seized nor under arrest. See People v. Myrick, 274 Ill. App. 3d 983, 989-90 (1995).

Our supreme court recently held that a defendant who alleged an unlawful seizure by an arresting officer under circumstances similar to those in this case was not unlawfully seized where the defendant, who was a passenger in a stopped vehicle and appeared to the officer to be intoxicated, was transported to the police station in a squad car when the circumstances did not allow for other transportation arrangements. In Smith, the defendant was a passenger in a vehicle that had been stopped on Interstate 88 for speeding and whose driver was placed under arrest for DUI. The defendant, who, the officer testified, appeared to be under the influence of alcohol as well, and the other passengers were not fit to drive the vehicle and attempted to make phone calls to arrange for other transportation. When they were unable to do so, police officers offered to transport them to the police station and in performing a preliminary pat-down search discovered a handgun in the defendant's possession. Smith, 214 Ill. 2d 339-42. The court reasoned that none of the Mendenhall factors were present in the events leading up to the search and that the officers were attempting to ensure the defendant's and his companions' safe passage from the tollway in suggesting that they ride to the police station in a squad car, concluding that no reasonable person in the defendant's position would not have felt free to leave the scene of the encounter. Smith, 214 Ill. 2d 354-56.

We reach a similar conclusion here, that defendant was not unlawfully seized. The evidence adduced at trial indicated that only two officers, Tyler and Evans, encountered defendant, that neither of them brandished a weapon in her presence, that neither of them

8

physically touched her, and that neither of them used harsh or coercive language or tone of voice to indicate that her presence was compulsory. Defendant was not placed in handcuffs or read her Miranda rights until after Tyler administered her sobriety tests. Allowing defendant to wait by the side of the interstate for a ride from her son would only have aggravated the traffic conditions Tyler described and delayed the securing of the scene of the accident. Tyler testified that he arranged for defendant's transport because he wanted to ensure her safe removal from a congested highway construction zone. Defendant herself testified that she was allowed to call her son both from her car and after she reached the police station. There was no indication from the recounting of her conversations with Tyler that he ever instructed her that she was not allowed to leave his presence; he never objected to having her son pick her up at the police station or indicated that she would not be allowed to leave once he arrived. Considering all of the relevant circumstances surrounding defendant's encounter with Tyler and Evans, and considering defendant's and the officer's available options in arranging for her safe passage, we find that a reasonable person would not have believed that he or she was forcibly detained in this instance. Accordingly, we conclude that the circuit court's denial of defendant's motion to quash and suppress was not erroneous.

Defendant next contends that the State failed to prove her guilty beyond a reasonable doubt of DUI because the evidence against her was circumstantial and failed to prove actual impairment, since she was able to move her vehicle in compliance with Trooper Tyler's instructions without incident. She argues that the only evidence against her, Tyler's testimony, did not establish the actual presence of an intoxicating substance in her bloodstream in an amount sufficient to impair her ability to drive and that her behavior at the time of her

9

encounters with Tyler and her performance in the sobriety tests he administered were attributable to her emotional condition and not the influence of alcohol. Defendant further argues that Tyler's opinion testimony as to her level of impairment was not sufficient to support her conviction because it lacked a proper foundation.

In assessing the sufficiency of the evidence to sustain a defendant's conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Smith, 185 Ill. 2d 532, 541 (1999). We may not substitute our judgment for that of the trial court and will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. People v. Lundy, 334 Ill. App. 3d 819, 825 (2002).

In order to sustain a conviction for driving under the influence of alcohol, the State must demonstrate that the defendant (1) drove a vehicle, and (2) did so while he or she was under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2004); People v. Long, 316 Ill. App. 3d 919, 926 (2000). The credible testimony of an arresting officer alone is sufficient to sustain a conviction for DUI; no scientific proof of intoxication need be offered in order to prove the State's case. People v. Elliott, 337 Ill. App. 3d 275, 281 (2003); People v. Benoit, 6 Ill. App. 3d 1031, 1033 (1972). An officer's testimony as to the defendant's appearance, speech, or conduct, that the officer detected the odor of an alcoholic beverage on the defendant's person, and that the defendant failed a field sobriety test is all relevant evidence of the defendant's mental and physical impairment. Elliott, 337 Ill. App. 3d at 281.

There is no argument that defendant drove her vehicle on the night on question.

Defendant argues only that Trooper Tyler's testimony, even taken at face value, is insufficient to sustain her conviction for DUI. She also argues that the fact that Tyler instructed defendant to move her car after the accident and that she did so without incident belies his testimony. We disagree.

First, the fact that a defendant suspected of DUI can operate a vehicle without incident is not dispositive of his or her innocence. The elements of the offense only require that a defendant operate a vehicle – with or without incident – while under the influence of an intoxicating substance.

Second, we find that Tyler's testimony was more than sufficient to sustain defendant's conviction. Tyler stated that he observed extensive damage to defendant's vehicle while investigating the accident. He also asserted that he detected the odor of an alcoholic beverage on defendant's breath, that her eyes appeared bloodshot, that her speech was slurred, that she would sway when standing up, and that she failed several field sobriety tests. He also tendered his opinion, based on his years of service as a state trooper, that defendant was under the influence of alcohol.

Defendant's proffering of an alternative basis for her condition on the night of her arrest, while it engenders our sympathy, is not so convincing that it engenders our credulity. We do not believe that a rational trier of fact could not have found defendant guilty, as the State's evidence was not so improbable or unsatisfactory so as to create a reasonable doubt. Accordingly, we find that the evidence was sufficient to sustain defendant's conviction for DUI.

Defendant also argues that Trooper Tyler's opinion testimony as to her level of intoxication lacked a sufficient foundation because the State offered no credentials that would

1-04-2191

qualify Tyler as an expert to testify as to defendant's level of impairment. We find that defendant has waived this argument in that she failed to object to the admission of Tyler's opinion testimony either at trial or in a posttrial motion. Our supreme court has held that, where a defendant acquiesces to the admission of a witness's opinion as to an element of the charged offense, the defendant cannot raise an argument as to the opinion's admissibility for the first time on appeal. People v. Bush, 214 Ill. 2d 318, 332-33 (2005). Accordingly, we will not address this claim.

Defendant next contends that the State failed to prove her guilty beyond a reasonable doubt of failure to reduce speed to avoid an accident because there was no evidence presented as to the actual speed at which defendant was operating her vehicle at the time of the accident.

In order to prove a defendant guilty of failure to reduce speed to avoid an accident, the State must adduce evidence that the defendant drove carelessly and that he or she failed to reduce speed to avoid colliding with persons or property. 625 ILCS 5/11-601(a) (West 2004); People v. Luka, 184 Ill. App. 3d 84, 86 (1989). Conviction for that offense does not require proof that the defendant was exceeding the speed limit because the offense can be committed regardless of the speed of the defendant's vehicle or the relevant speed limit. Luka, 184 Ill. App. 3d at 86.

Defendant relies on People v. Sampson, 130 Ill. App. 3d 438 (1985), and People v. Brant, 82 Ill. App. 3d 847 (1980), for the proposition that guilt of failure to reduce speed cannot be inferred from the mere fact that a defendant was involved in an accident.

Here, the evidence established that the area of Interstate 57 where the accident took place was under construction and was highly congested. Banger testified that defendant's vehicle

12

swerved in front of hers and forced her vehicle off the road. Defendant testified that she increased her speed at the apparent urging of the driver behind her and that her vehicle collided with a guardrail after the driver who had been following her forced her vehicle off the road. Trooper Tyler testified that he observed extensive damage to the front fender of defendant's vehicle and that the vehicle had to be towed from the scene of the accident.

On this record, we cannot conclude that this testimony, on its own, was sufficient to establish that defendant committed the offense of failing to reduce speed to avoid an accident. While the State was not required to demonstrate the exact speed at which defendant's vehicle was traveling, it remains unclear whether defendant was operating her vehicle at a speed which was unsafe under the relevant conditions. Banger testified that defendant's vehicle was in front of hers just before the accident occurred, and defendant testified that another vehicle was traveling dangerously close to her vehicle's rear bumper. Reducing her vehicle's speed in such an instance could likely have caused an even worse collision than the one that did occur. While defendant's conduct did indeed cause an accident and would likely constitute several other violations of the Illinois Vehicle Code (625 ILCS 5/11-201 *et seq.* (West 2004)), we do not believe that it amounted to an offense under section 11-601(a), and we therefore reverse the circuit court's guilty finding on that count.

Defendant lastly contends that the trial court erred in imposing the maximum fine of $2,500 after taking judicial notice that she was financially unable to pay it, and although the court allowed the fine to be satisfied by defendant's participation in SWAP, the fine caused the court to impose $1,046.50 in fees. She asserts that we should remand for a determination of whether the maximum fine was appropriate considering her financial situation and future ability

13

to pay the imposed fine. The State counters that defendant has waived this argument by failing to object at the time of sentencing and failing to file a motion to reconsider, that the fine was not excessive in light of the fact that the circuit court allowed that it be satisfied by defendant's participation in SWAP, and that the fees defendant incurred were not an abuse of discretion because they were mandatory pursuant to the relevant sentencing statutes.

While we agree with the State that defendant failed to properly raise any issues as to her sentence at the trial level, we will consider her argument as an attack on a void judgment, which can be challenged at any time. See People v. Mathis, 357 Ill. App. 3d 45, 51 (2005).

A circuit court's sentencing decision is entitled to great deference and we will not reverse or reduce a defendant's sentence imposed within statutory guidelines absent an abuse of the circuit court's discretion. People v. Kolzow, 301 Ill. App. 3d 1, 8 (1998). This court considers the entire scope of facts surrounding a criminal offense to determine whether a defendant's sentence is excessive. People v. Heineman, 260 Ill. App. 3d 476, 480 (1994). In imposing a fine, a circuit court must consider the financial resources and future ability of the offender to pay the fine. 730 ILCS 5/5-9-1(d)(1) (West 2004); People v. Williams, 256 Ill. App. 3d 370, 373 (1993). We may not substitute our judgment for that of the circuit court merely because we would have weighed factors in aggravation and mitigation differently. People v. Streit, 142 Ill. 2d 13, 19 (1991).

Defendant was convicted of DUI, which is a Class A misdemeanor (625 ILCS 5/11-501(c) (West 2004)) and which is punishable by a fine of up to $2,500 in addition to a term of conditional discharge (730 ILCS 5/5-9-1(a)(2), (b) (West 2004)). The ADES revealed that defendant had been arrested for DUI on two prior occasions and that her total household income

was $11,000 per year. The circuit court indicated that the fine could be satisfied upon defendant's completion of the SWAP program and calculated additional fines mandated under the Violent Crime Victims Assistance Fund (725 ILCS 240/10(b) (West 2004)), which assesses a fee of $4 per every $40 in fines imposed for a DUI offense, as well as the LEADS Maintenance Fund and the Traffic and Criminal Conviction Surcharge Fund (730 ILCS 5/5-9-1(c) (West 2004)), which assesses a fee of $5 for every $40 in DUI fines. The court also assessed a fee of $200 pursuant to the DUI statute mandating a fee for subsequent offenses (625 ILCS 5/11-501(j) (West 2004)), a fee of $100 pursuant to the Trauma Center Fund (730 ILCS 5/5-9-1(c-5) (West 2004)), and several smaller fees to cover the State's costs of prosecuting her offenses. Penalties imposed pursuant to the Violent Crime Victims Assistance Fund and the Traffic and Criminal Conviction Surcharge Fund are mandatory and are not within a circuit court's discretion. See People v. Rinaldi, 179 Ill. App. 3d 539, 545 (1989); People v. Wisotzke, 204 Ill. App. 3d 44, 51 (1990).

Defendant argues that, because the circuit court acknowledged her financial situation and allowed that the maximum $2,500 fine imposed against her be satisfied by her participation in SWAP, the actual liability she incurred in sentencing in addition to conditional discharge was a fine of $0. Thus she concludes that the penalties imposed pursuant to the Violent Crime Victims Assistance Fund and the Surcharge Fund should have been calculated from a base fine of $0 and that the trial court erred in calculating and imposing those penalties using a starting sum of $2,500, especially considering that the trial judge was aware of her inability to pay. We do not agree.

In this case, defendant committed her third DUI offense in 10 years and caused an

accident that resulted considerable damage to her vehicle and Banger's, as well as bodily harm to Banger. Considering that a sentencing decision is within the circuit court's discretion, and that the record demonstrates that the trial judge was aware of defendant's finances – a fact made all too apparent by the court's agreeing with the State's recommendation that defendant could satisfy the fine by participating in SWAP – we cannot conclude that the court's imposition of the $1,046.50 in statutory, mandatory fees constitutes an abuse of discretion. See People v. Bishop, 354 Ill. App. 3d 549, 563 (2004) (trial court's imposition of fine not an abuse of discretion where record demonstrates that court was aware of facts supporting determination of the defendant's ability to pay). Furthermore, even where opposing parties agree that a fine not be imposed as part of a sentencing agreement, a trial court may not decline to impose mandatory penalties. See People v. Ryburn, No. 4-04-0836 (November 4, 2005). If anything, the circuit court's decision to allow defendant to satisfy the $2,500 through SWAP seems generous and hardly abusive at all. Because defendant's conditional discharge and fines were incurred as a result of her conviction for DUI, her sentence is not affected by our reversal of her conviction for failure to reduce speed to avoid an accident. Accordingly, we uphold the circuit court's sentencing order.

For the foregoing reasons, we affirm the judgment of the circuit court as to defendant's conviction for DUI and her sentence imposed for that offense, and reverse outright her conviction for failure to reduce speed. Pursuant to our authority under Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)), we direct the clerk of the circuit court to amend the mittimus to reflect that defendant was convicted only of DUI and sentenced pursuant to that count.

Affirmed in part and reversed in part.

QUINN, P.J., and MURPHY, J., concur.

16