2022 IL App (2d) 210032-U
No. 2-21-0032
Order filed April 29, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 19-DT-642 19-TR-29132 |
| BRYAN J. BLAZEK, | ) ) ) | Honorable Mark R. Gerhardt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Zenoff and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence was sufficient to convict defendant of driving under the influence of alcohol. Defendant's challenges to two pretrial rulings are forfeited.  Affirmed.

¶ 2    A jury convicted defendant, Bryan J. Blazek, of driving under the influence of alcohol (DUI), a Class A misdemeanor (625 ILCS ILCS 5/11-501(A)(2) (West 2018)) and improper lane usage.  The trial court sentenced defendant to 60 days in jail, one year of conditional discharge, $1000 in fines plus assessments, completion of a DUI evaluation, and one victim impact panel.

¶ 3       On appeal, defendant argues that the evidence was insufficient to support his conviction for DUI.  Defendant also challenges two of the trial court's pretrial rulings: (1) the denial of defendant's motion to quash arrest and suppress the evidence; and (2) the granting of the State's motion *in limine*.  We reject defendant's sufficiency argument on the merits, and we determine that defendant's latter two arguments are forfeited.  Accordingly, we affirm.

¶ 4                                  I. BACKGROUND

¶ 5       In the early morning hours of October 1, 2019, Lieutenant William Lutz initiated a traffic stop after observing defendant, then age 37, move abruptly toward the center of the roadway and, also, drive on the shoulder of the road.  Lutz called two officers for back up, questioned defendant, and, ultimately, arrested defendant for DUI and for improper lane usage.

¶ 6                                 A. Pretrial Rulings

¶ 7       On March 5, 2020, defendant, represented by counsel, filed what is listed on the docket sheet as "MOTION-QUASH ARREST/SUPPRESS EVIDENCE."  However, the heading of the document filed that date reads "MOTION TO SUPPRESS STATEMENTS PURSUANT TO 725 ILCS 5/114-11."  Indeed, in substance, the motion was a motion to suppress statements pursuant to section 114-11 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-11) (West 2018) (allowing a defendant to move to suppress a confession that was not voluntarily given).  At issue were several incriminating statements made by defendant to Lutz during the traffic stop, including that he felt "buzzed" and that, after driving for a bit, he pulled into a parking lot because he believed he had too much to drink.  Defendant argued that the "ordinary" traffic stop had progressed to his placement in custody, and thus, Lutz's failure to issue a *Miranda* warning rendered his statements involuntary.  See *Miranda v. Arizona*, 384 U.S. 436 (1966).  The trial court disagreed.  The court watched the 20-minute video of the stop, and it found that defendant was not

in custody until approximately 18 minutes into the stop. At that point, defendant refused Lutz's final offer to perform a field sobriety test and Lutz responded by informing defendant that he was under arrest. Lutz did, very shortly thereafter, read defendant his *Miranda* rights. However, in the interim, defendant made one statement concerning his past DUI convictions. The court ordered that statement suppressed, with the State to mute that portion of the video.

¶ 8     Later, the trial court ruled that, separate from the *Miranda* issue, two additional 20-second portions of the 20-minute video would be muted. In these earlier segments, defendant also volunteered information concerning past DUI and traffic offenses. The court deemed these segments more prejudicial than probative. The State objected to the muting of one of these statements, arguing that the statement was probative not for its content but for defendant's demeanor when making it. The court disagreed, stating: "I do appreciate the argument ***, but I don't hear any slurring, mumbling, bumbling, stumbling, or anything else [that would be] probative as to the [instant] DUI[.] So we will use the muted version of those two brief segments."

¶ 9     Finally, the trial court ruled on several motions *in limine*. Relevant here, the State sought to bar the defense from eliciting testimony on metabolization and/or absorption of alcohol without expert testimony. The court granted the motion, responding as follows to the parties' concerns:

> "THE STATE: And the third [motion] is to bar any testimony, questioning, or argument on metabolization or absorption of alcohol without expert testimony. I don't anticipate this coming up, however, it is something I included in the motion.
>
> THE DEFENSE: Well, I guess, Judge, [I am] certainly not planning to get into any calculations, but I think *the timing of the alcohol consumption* is important, and I don't see why I couldn't ask questions on that. Officer Lutz does on the video that the State is planning to introduce, so—

THE COURT: *That's not what they are asking about.*

THE DEFENSE: Well, if they are asking me for me to get into calculations to say that he would have been this BAC at this time based on this consumption, I have no intention of doing that.

THE COURT: All right. That motion is granted." (Emphases added.)

¶ 10                                      B. Trial

¶ 11    At trial, the State presented one witness, Lutz. It also played the 20-minute video, with certain segments muted as set forth above.

¶ 12    Lutz testified that, on October 1, 2019, just after midnight, he was traveling north on Route 31 in McHenry County. He saw a black Saab SUV traveling south on Route 31. As Lutz approached the Saab, he saw that its oncoming headlights "moved abruptly toward the center of the roadway as if it was traveling in the middle of the road." He saw the shift of the headlights, but he did not see the car itself in the center of the road. Nevertheless, this concerned him enough to perform a U-turn so that he could follow the Saab. The Saab was traveling at a high rate of speed, so it took "a while" for Lutz to catch the Saab. As Lutz followed the Saab, he observed the taillights of the vehicle swaying from side to side as if the vehicle were using the entire southbound lane of travel. When a second vehicle approached from the north, the Saab "moved quickly" over to the right and passed through the southbound solid white fog-line, so that it was traveling partially on the paved shoulder area of the road. It traveled along the shoulder area for one or two car lengths. After returning to the lane, it crossed over into the shoulder area a second time, for no apparent reason. Shortly thereafter, it pulled into an office park. At this point, Lutz activated his squad lights. The Saab circled around the parking lot until it again faced the entrance as though it might go back onto Route 31. Lutz did not consider this a "normal" way to pull into a parking lot.

¶ 13    Due to the manner in which defendant circled around the parking lot, Lutz wanted to make contact immediately.  As such, Lutz exited his vehicle without grabbing his microphone.  This first interaction lasted approximately 15 seconds.  Lutz then went back to his squad car and retrieved his microphone.  Lutz can be heard asking defendant for his driver's license.  Defendant stated that he did not have it with him but immediately produced his insurance card.  With this information, Lutz was able to confirm that defendant had a valid driver's license.

¶ 14    Lutz asked defendant why he pulled into the parking lot.  First, defendant stated that he wanted to smoke a cigarette.  Then, unprompted, defendant said that he had "to be honest" with Lutz: "I had a couple of drinks tonight."  Defendant denied seeing Lutz following him before he pulled into the parking lot.

¶ 15    Lutz then informed defendant that he stopped him because he saw him crossing the lane lines.  Defendant responded, "I know."  Defendant then offered that he pulled into the parking lot because he thought it would be a good time to pull over.  Lutz asked defendant if he thought that it was a good time to pull over because he had a few drinks.  Defendant again stated that he would "be honest" and the answer was "yes."

¶ 16    Lutz asked defendant why he crossed the lane lines.  Defendant answered that he had an astigmatism; this made it difficult to see at night; and he should be wearing his glasses.  Defendant was unable to answer why he was not wearing his glasses, stating only, "you know ***."  Defendant then said that he tended to drive to the left.  However, Lutz noted that there was no restriction on defendant's driver's license that required him to drive with glasses.

¶ 17    Lutz asked defendant where he had been coming from.  Defendant answered that he had been coming from his repair shop.  He then volunteered that he had "three tonight *** right before

I left." Lutz asked, "three what," and defendant answered that he had three "tall boys" of Pabst Blue Ribbon. Lutz understood that tall boys were more than 12 ounces each.

¶ 18    Later, two patrol officers arrived as backup and Lutz asked defendant to step outside the vehicle to continue the conversation. Lutz asked defendant to repeat some of the earlier stated information. Defendant now stated that he pulled over to put on his glasses, not to smoke a cigarette or because he had too much to drink. Defendant also stated that he had three tall boys within four hours, ending at 11 p.m., not "right before" getting on the road.

¶ 19    Lutz informed defendant that, based on defendant's traffic violations and defendant's admission to drinking, he was going to ask defendant to perform certain field sobriety tests. Defendant interrupted, informing Lutz that he was going to leave his car in the parking lot and find another way home, adding that would be "the wisest decision." When Lutz asked defendant why that would be the wisest decision, defendant paused and then answered, "because I had three drinks."

¶ 20    Lutz renewed his request for defendant to perform the field sobriety tests. Defendant declined. Lutz asked defendant to rate his own level of intoxication on a scale of 1 to 10, and defendant answered 2. When asked whether he felt drunk, defendant answered that he had a "slight buzz," and he felt like he "had a beer in [his] system."

¶ 21    Lutz asked defendant a third time to perform the field sobriety tests. When defendant again refused, Lutz asked defendant if he would be willing to recite the alphabet. Defendant accepted, performing smoothly to the letter V, at which point he paused for six to seven seconds. He then resumed with what sounded like "W, X, Y, *R*, Z." Lutz told defendant he did not believe it would be a good idea to let defendant continue driving home, reminding him that he "struggled" to complete the alphabet. Defendant told Lutz that he was merely nervous.

¶ 22    Finally, defendant provided more information about the timing of his drinking, first saying that he finished drinking at 11 p.m., then offering that it was closer to midnight. Lutz stated that he would ask defendant one more time if he wanted to take the field sobriety tests. Lutz explained that he did not believe that defendant was driving poorly because he had forgotten his glasses but, rather, because he drank too much alcohol. The field sobriety tests could help clear up the matter. Defendant again declined to take the field sobriety tests, and Lutz placed defendant under arrest for DUI.

¶ 23    Lutz further testified to his personal observations of defendant. Lutz detected a strong odor of alcoholic beverage on defendant's breath, immediately following the initial, 15-second interaction. Defendant's speech was slurred and mumbled, and his eyes were glassy and bloodshot. When defendant stood outside the vehicle, he alternated between standing with his feet wide apart and pacing around. Lutz had the impression that defendant did this to maintain his balance. Lutz also had the impression that defendant had difficulty putting his thoughts together.

¶ 24    Though not captured in the video, after reading defendant his *Miranda* rights, Lutz asked defendant the date. Defendant "said something to the effect of like [9] and then 15 and then [9] or 15, [9] and then 15 again." Again, it was October 1, 2019. Defendant also stated that it was a Friday. In fact, it was a Tuesday.

¶ 25    During cross-examination, Lutz testified that he has been trained to detect DUIs. Over his career, he has interacted with more than 1000 intoxicated persons. Lutz acknowledged that the alphabet test was not a standard field sobriety test and that defendant reported being nervous after having difficulty with the alphabet test. Had defendant performed the standard field sobriety tests, Lutz would not have asked him to recite the alphabet.

¶ 26    As to defendant's speech, the following exchange occurred:

"Q. *** You believe that the night you arrested [defendant] his speech was not understandable, correct?

A. I was able to understand him. I said it was slurred and mumbled, but I was able to understand him.

* * *

Q. And, Lieutenant, his speech is reflected on the video, right?

A. Correct."

¶ 27 Lutz explained that he did not ask further questions about defendant's astigmatism, because he already understood the condition: "It's a common problem within the United States." In addition, as he had previously testified, there was no restriction on his driver's license based on the astigmatism.

¶ 28 Lutz agreed that there is no correlation between the strength of the odor of alcoholic beverage on a person and that person's level of intoxication. An odor of alcoholic beverage merely indicates that the person drank some amount of alcohol-based beverage.

¶ 29 Lutz also conceded several instances where defendant complied with traffic regulations and demonstrated steady coordination. Defendant signaled with ordinary care before turning into the parking lot. Defendant did not make a wide turn into the parking lot. After circling the lot, defendant performed a clean, rather than a rolling, stop. Defendant produced his insurance card without fumbling. When defendant exited the vehicle, he did not brace himself or lean on the door. Although Lutz had testified that defendant had been driving at a high rate of speed, Lutz did not record the specific rate.

¶ 30    Defendant moved for a directed verdict.  He argued, *inter alia*, that the video did not support Lutz's testimony that his speech was slurred.  The trial court denied the motion, stating that it believed the video corroborated "much of" Lutz's testimony.

¶ 31    Defendant called one witness, his father, Jerry Blazek.  Jerry testified that, when he picked up his son from the police station, his son did not exhibit signs of intoxication.  He loved his son, but he was not willing to lie for him.

¶ 32    Following deliberation, the jury convicted defendant of DUI and improper lane usage.  Defendant filed a posttrial motion arguing: (1) "[t]he [c]ourt erred in not granting [defendant's] *Miranda* motion"; and (2) "[t]he government failed to prove [defendant] guilty beyond a reasonable doubt."  Defendant does not point us to the trial court's written order denying his posttrial motion.  Further, it does not appear that the motion was heard prior to the sentencing hearing as originally planned.  The trial court sentenced defendant as stated.  Defendant now appeals his conviction for DUI.

¶ 33                                    II. ANALYSIS

¶ 34    On appeal, defendant argues that the evidence was insufficient to support his conviction for DUI.  Defendant also challenges two of the trial court's pretrial rulings: (1) the denial of defendant's motion to quash arrest and suppress the evidence; and (2) the granting of the State's motion *in limine* to bar the defense from eliciting statements concerning the metabolization of alcohol without expert testimony.  For the reasons that follow, the evidence was sufficient to convict defendant of DUI.  Defendant's arguments concerning the trial court's pre-trial rulings are forfeited and are, in any event, without merit.

¶ 35                                    A. Sufficiency

¶ 36    In reviewing a challenge to the sufficiency of the evidence, the question is whether, viewing the evidence in a light favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). We will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.* Moreover, it is not our role to retry the defendant or substitute our judgment for that of the trier of fact. *Id.* Rather, we defer to the trier of fact on matters of witness credibility and the weight to be afforded to the evidence. *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

¶ 37    Section 11-501(a)(2) provides that "a person shall not drive or be in actual physical control of any vehicle within this State while *** under the influence of alcohol." 625 ILCS 5/11-501(a)(2) (West 2018). " 'A person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007) (quoting Illinois Pattern Jury Instructions, Criminal No. 23.29 (4th ed. 2000)). As such, the State need not prove that a defendant was "completely incapacitated" or even highly impaired. See *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 29; *People v. Phillips*, 2015 IL App (1st) 131147, ¶¶ 20-21. Stated simply, the State need only prove that, due to the consumption of alcohol, the defendant was "incapable of driving safely." *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20.

¶ 38    Scientific testimony is not necessary to prove the offense of DUI. *People v. Sturgess*, 364 Ill. App. 3d 107, 115 (2006). The credible testimony of the arresting officer is alone sufficient to sustain a conviction. *Id.* "An officer's testimony as to the defendant's appearance, speech, or conduct, that the officer detected the odor of an alcoholic beverage on the defendant's person, and that the defendant failed a field sobriety test is all relevant evidence of the defendant's mental and

physical impairment." *Id.* The trier of fact may consider a defendant's refusal to submit to tests as circumstantial evidence of consciousness of guilt. *Morris*, 2014 IL App (1st) 130512, ¶ 20 (referring to the breathalyzer test, specifically).

¶ 39    Defendant argues that the State failed to prove he was under the influence of alcohol. In his view, the video does not show that his speech was slurred, and he points to the trial court's pretrial comment that it did not "hear any slurring, mumbling, bumbling, stumbling, or anything else." Defendant also argues that his improper lane usage was due to his astigmatism, not due to intoxication, and he notes several instances where he complied with traffic regulations and demonstrated steady coordination. Finally, defendant notes that he did not fail any field sobriety tests, because he respectfully declined to take them.

¶ 40    Briefly, defendant takes the trial court's pretrial comment out of context. The court made the comment upon which defendant now relies when considering the State's motion to play a 20-second segment of the video in which defendant discusses a prior DUI to show defendant's state of intoxication. See *supra*, ¶ 8. In that segment specifically, the trial court stated it did not hear defendant slur his speech. The court never stated that the entirety of the video failed to show defendant speaking or moving as though intoxicated. In fact, when defendant argued in his motion for a directed verdict that Lutz had exaggerated defendant's poor speech and comportment, the trial court disagreed, noting that it found the video supported "much of" Lutz's testimony. We note that, at oral argument, the State conceded that the video does not show defendant slur his words, but the State maintained its position that the video shows defendant at times pause, search for words, and appear confused.

¶ 41    As to whether defendant's improper lane usage was due to astigmatism, the record does not support that Lutz failed to explore an innocent explanation for defendant's poor driving. Lutz

testified that he was familiar with astigmatism as a condition. He gave defendant an opportunity to explain that his condition caused him to drive to the left. Lutz also testified that he did not feel the need to further explore defendant's claim of astigmatism, because defendant had no vision restrictions on his driver's license. In any case, while defendant's assertion that he drove to the left may have explained why he drove into the center of the lane toward oncoming traffic, it would not have explained why he twice drove to the right along the shoulder of the road or why, during other stretches, he drove from side to side within his lane. In this way, defendant's alleged medical condition is different than the medical condition of the defendant in *People v. Motzko*, 2017 IL App (3d) 160154, ¶ 6, where that condition more directly implicated the field sobriety test at issue. There, the officer failed to consider that the defendant was blind in one eye and had likely sustained a head injury prior to administering the horizontal gaze nystagmus (HGN) test. *Id.*

¶ 42   Finally, we appreciate defendant's stated instances of acceptable driving and steady coordination. Defendant used his turn signal and, after circling the parking lot, he performed a clean stop. However, these isolated instances do not preclude a rational trier of fact from finding that defendant was under the influence of alcohol such that he was incapable of driving safely. See *Tatera*, 2018 IL App (2d) 160207, ¶ 29 (evidence sufficient to convict defendant of DUI even though he was able to exit his car unassisted and did not otherwise stumble). Indeed, the evidence showed that defendant *was not* driving safely when Lutz decided to follow him. Lutz first encountered defendant when defendant "moved abruptly" toward him in the oncoming lane. Lutz performed a U-turn to follow defendant, but he did not immediately catch defendant because defendant was traveling at a high rate of speed. Lutz then observed defendant overreact to the presence of an oncoming vehicle by "moving quickly" to the shoulder, drive along the shoulder a second time for no apparent reason, and intermittently sway within the boundaries of the lane.

¶ 43    In addition, while defendant did not need to brace himself against the vehicle in order to exit, defendant did alternate between standing with his feet far apart and pacing around. Lutz interpreted defendant's movements as an attempt to remain steady and the jury was free to accept that interpretation. The video further corroborates Lutz's testimony that defendant had lengthy pauses in his speech, including a six-second pause while reciting the alphabet. Lutz reported that defendant had glassy eyes and a strong odor of alcoholic beverage on his breath. Defendant informed Lutz that he had three tall boys, *i.e.*, alcoholic beverages exceeding 12 ounces each, as soon as "right before" getting on the road. More importantly, defendant effectively informed Lutz that he himself was uncertain of his ability to drive safely. He informed Lutz that he had pulled over *not* because he saw Lutz following him, but because he had a few drinks. Defendant agreed with Lutz that it would not be "wise" to continue driving home. Although he rated his level of intoxication as a 2 on a scale from 1 to 10, defendant agreed that he had a "slight buzz" and that he could feel that he had "beer in [his] system." According to Lutz, defendant could not communicate the date and he did not know the day of the week. Defendant mumbled something to the effect that the date was "9" and "15," presumably September 15, when the date was October 1. Defendant also stated that it was a Friday when it was a Tuesday. Finally, while it is true that there was no evidence of intoxication derived from any of the recognized field sobriety tests, defendant's refusal to submit to the tests is circumstantial evidence of consciousness of guilt. See, *e.g.*, *Morris*, 2014 IL App (1st) 130512, ¶ 20.

¶ 44    The case relied upon by defendant, *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶¶ 24-25, is not a sufficiency case. Rather, in *Halerewicz*, the appellate court determined that, even if the trial court erred in its response to a jury question concerning the definition of ordinary care, there was no plain error because the evidence was not closely balanced. *Id.* The sufficiency cases

cited by the State, in contrast, support our determination. In *Tatera*, for example, the defendant committed a traffic violation by driving through a blocked portion of the road; provided inaccurate answers to basic questions (stating that he was in Wisconsin when he was in Illinois); was easily irritated and ultimately refused to perform a field sobriety test telling the officer to "just arrest [him]"; and had glassy eyes and the odor of an alcoholic beverage but was able to exit his vehicle unassisted and did not otherwise stumble or lose his balance. *Tatera*, 2018 IL App (2d) 160207, ¶¶ 6-10, 29. Similarly, here, as we have discussed, defendant committed a traffic violation by crossing the lane lines, provided inaccurate answers to basic questions (such as the date and day of the week), refused to perform field sobriety tests, did not ask the officer to arrest him but did admit to drinking alcohol right before getting on the road, had glassy eyes and the odor of alcoholic beverage, but did not have difficulty exiting his vehicle. The evidence in this case, in total, was sufficient to support the jury's determination that defendant was under the influence of alcohol such that he could not drive safely.

¶ 45                                    B. Motion to Suppress

¶ 46    Defendant argues that the trial court erred in denying his motion to quash arrest and suppress evidence, because Lutz did not have probable cause to arrest him. An officer has probable cause to arrest when "the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Motzko*, 2017 IL App (3d) 160154, ¶ 19. In reviewing the trial court's ruling on a motion to suppress evidence, mixed questions of law and fact are presented. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). We review the trial court's historical findings of fact according to the manifest-weight-of-the-evidence standard. *Id.* However, our ultimate review of whether the evidence should be suppressed is *de novo*. *Id.*

¶ 47    We determine that defendant's argument is forfeited.  To preserve an alleged error, defendant must object both at trial and in a written posttrial motion.  See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); see also *People v. Crosby*, 231 Ill. 2d 262, 272 (2008) (as specifically applied to a defendant who failed to raise the denial of his motion to suppress evidence based on lack of probable cause in a written posttrial motion).  Additionally, "[a] defendant may not argue on appeal that a motion to suppress should have been granted for reasons not specified in the motion and not argued in the trial court."  *People v. Blankenship*, 353 Ill. App. 3d 322, 324 (2004).

¶ 48    Here, the docket sheet indicates that defendant filed a motion to quash arrest and suppress evidence.  However, the heading and the substance of the filed document itself show that defendant sought to suppress statements pursuant to section 114-11 of the Code.  725 ILCS 5/114-11 (West 2018) (allowing a defendant to move to suppress a confession that was not voluntarily given).  Moreover, at the hearing on the motion to suppress, defendant argued only that his incriminating statements should be suppressed as involuntary based on Lutz's alleged failure to timely issue a *Miranda* warning, not because Lutz lacked probable cause to arrest.  Similarly, in his written motion for a new trial, defendant argued that the court erred in "not granting [his] *Miranda* motion," not that Lutz lacked probable cause to arrest.

¶ 49    As defendant did not argue at the hearing on the motion to suppress or in a written posttrial motion that Lutz lacked probable cause to arrest, the issue is forfeited.

¶ 50                                    C. Motion *in Limine*

¶ 51    Defendant argues that the trial court erred in granting the State's motion *in limine* to bar the defense from eliciting testimony, questioning, or raising arguments concerning the metabolization and/or absorption of alcohol without expert testimony.  Defendant does not disagree that testimony concerning the metabolization and/or absorption of alcohol is a scientific

matter which is admissible only if presented by a qualified expert. See Ill. R. Evid. 702 (eff. Jan. 1, 2011) (a witness must be qualified as an expert in order to testify to scientific, technical, or other specialized knowledge that will aid the trier of fact); *People v. Floyd*, 2014 IL App (2d) 120507, ¶ 22 (specifically addressing the technique of retrograde extrapolation). Rather, he argues that the trial court's ruling improperly prevented Lutz from testifying as a lay witness as to his general opinion on the question of defendant's intoxication, such as by noting "when [defendant] consumed alcohol, the time that elapsed between consumption and arrest, and his basic understanding of how the body absorbs and metabolizes alcohol[.]" See Ill. R. Evid. 701 (eff. Jan. 1, 2011) (a lay witness may testify to matters which are "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's determination of the issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). We review a trial court's grant of a motion *in limine*, including a decision on the admissibility of lay or expert testimony, for an abuse of discretion. *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 58. A court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the court. *People v. Edwards*, 343 Ill. App. 3d 1168, 1183 (2003).

¶ 52     First, we note that defendant did not raise this issue in a posttrial motion, and it is, therefore, forfeited. See *Enoch*, 122 Ill. 2d at 186. Forfeiture aside, defendant does not adequately explain why Lutz should have been able to testify as a lay witness to his "basic understanding" of how a body metabolizes alcohol. The metabolization of alcohol is a scientific matter and is admissible only if presented by an expert (*Floyd*, 2014 IL App (2d) 120507, ¶ 22), and, so, we must summarily reject this portion of defendant's argument. To the extent that defendant means only that Lutz

should have been able to testify to the timing of defendant's alcohol consumption, we address that matter next.

¶ 53    The remainder of defendant's argument mischaracterizes what occurred at the hearing on the motion *in limine*.  There, defendant stated that he did not see why he could not get into the timing of the alcohol consumption.  The trial court responded: "That's not what they're asking about."  Thus, the trial court never precluded defendant from questioning Lutz about "when [defendant] consumed alcohol [and] the time that elapsed between consumption and arrest[.]"  Indeed, Lutz did testify to defendant's statements concerning the same.  Lutz testified that defendant reported drinking three tall boys, which Lutz understood to be greater than 12 ounces each.  Lutz further testified, and the video showed, that defendant answered, variably, that he stopped drinking "right before" getting on the road, one hour before getting on the road, and two hours before getting on the road.

¶ 54    The trial court's ruling on the State's motion *in limine* was not an abuse of discretion, and it did not preclude defendant from eliciting the testimony he now—incorrectly—claims was not admitted.

¶ 55                                III. CONCLUSION

¶ 56    For the reasons stated, we affirm the judgment of the trial court.

¶ 57    Affirmed.